**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division: Montgomery County)**

| | |
|---|---|
| AMERICAN ASSOCIATION OF PHYSICIANS FOR HUMAN RIGHTS, INC. d/b/a GLMA: HEALTH PROFESSIONALS ADVANCING LGBTQ+ EQUALITY; *et al*., | |
| *Plaintiffs*, | Civil Action No. 8:25-cv-01620-LKG |
| v. | |
| NATIONAL INSTITUTES OF HEALTH; *et al*., | |
| *Defendants*. | |

**MEMORANDUM OF LAW AND AUTHORITY IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM, TO WAIVE
REQUIREMENT UNDER LOCAL RULE 102.2(a) TO PROVIDE ADDRESSES IN
COMPLAINT CAPTION, AND FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 3

   A.   The Executive Orders and Agency Directives. .................................................... 3

   B.   The Pseudonymous Plaintiffs ............................................................................. 4

ARGUMENT .................................................................................................................... 5

   I.   THE *JAMES* FACTORS WEIGHT STRONGLY IN FAVOR OF PSEUDONYMITY. .. 5

      A.   Pseudonymous Plaintiffs' Justifications Go Beyond Avoiding Annoyance and Are Necessary to Preserve Their Privacy and Sensitive Personal Information. ............................ 6

      B.   Identification Poses a Risk of Harm to Both the Requesting Parties and Related Innocent Nonparties. ......................................................................................... 8

      C.   There Are No Minors Involved in This Request. .......................................... 11

      D.   Defendants Are Government Agencies and Officials. ................................... 12

      E.   Pseudonymity Does Not Undermine the Public's Interest in Open Judicial Proceedings. 13

      F.   There Is No Risk of Unfairness to Defendants If Plaintiffs Proceed Pseudonymously. 15

   II.   THE COURT SHOULD WAIVE LOCAL RULE 102.2(a)'S REQUIREMENT TO PROVIDE ADDRESSES IN THE COMPLAINT CAPTION. ............................................... 16

CONCLUSION ............................................................................................................... 17

Plaintiffs submit this memorandum of law in support of their motion for leave to proceed under pseudonym, to waive the requirement under Local Rule 102.2(a) to provide addresses in complaint caption, and for a protective order.  The request for leave to proceed under pseudonyms and for protective order applies to Plaintiffs Phoebe Poe, Rachel Roe, and Susana Soe, as well as pseudonymous member declarants of Plaintiff GLMA (together, "Pseudonymous Plaintiffs").[1] The request to waive requirement under Local Rule 102.2(a) to provide addresses in complaint caption applies to all Plaintiffs.

## INTRODUCTION

Plaintiffs are individuals whose research grants from the National Institutes of Health ("NIH") were terminated based on their focus on healthcare issues facing the LGBTQI+ community, including more specifically, transgender people. Plaintiffs reasonably fear that openly associating with such issues—especially in public litigation—will leave them vulnerable to doxing attacks (and far worse).[2]  Certain protections are warranted to protect those stepping forward to exercise their rights to challenge government action.

On January 20 and 21, 2025, President Trump signed three executive orders banning the use of federal grant money for anything that his administration officials deemed related to "gender identity" or "diversity, equity, inclusion, and accessibility" ("DEIA"). From February 10 to March 25, 2025, in response to President Trump's orders, the Department of Health and Human Services ("HHS") and NIH began terminating grants the agency determined were contrary to the

---

[1] To protect their privacy pending consideration of this motion, in their Complaint and this motion, Plaintiffs have used the pseudonyms which they seek leave to use in this action herein.

[2] *See*, *e.g.*, Malcolm Ferguson, *Judges Who Rule Against Trump Become Target of New MAGA War*, The New Republic (May 2, 2025), *available at* this hyperlink; *see also* Clarissa-Jan Lim, *Michael Cohen and his family were doxed as he's accused of 'betraying Trump,'* MSNBC (June 4, 2024), *available at* this hyperlink.  *See also* Dan Levine and Sarah N. Lynch, *US Justice Department directs investigations over gender-affirming care*, Reuters (Apr. 23, 2025) (describing the Attorney General's directive to line prosecutors to open investigations relating to gender-affirming care), *available at* this hyperlink.

administration's priorities. This led to an unprecedented mass wave of terminations targeting grant funding for research projects that, in the administration's view, related to gender identity and DEI, including research into the health needs and health disparities facing LGBTQI+ people. As a result of these blanket and indiscriminate terminations, Pseudonymous Plaintiffs Phoebe Poe, Rachel Roe, and Susana Soe, as well as additional health researchers who are members of GLMA, lost their grant funding.

Proceeding under pseudonym is necessary to protect Pseudonymous Plaintiffs, including member declarants of GLMA, from undue harassment, discrimination, and retaliation because of their research of LGBTQI+-related health topics. To avoid risks of serious mental, emotional, and physical harm, as well as undue invasions of their privacy and that of their families and patients, these Pseudonymous Plaintiffs, including member declarants of GLMA, respectfully request permission to litigate under pseudonyms for the duration of this case and for a protective order barring disclosure of their real names and other identifiers. Similarly, to protect their privacy and safety and to avoid exposure to discrimination and harassment, all Plaintiffs, including Pseudonymous Plaintiffs, also request waiver of the requirement under Local Rule 102.2(a) that they provide their addresses in the caption of the Complaint.[3]

Pseudonymous Plaintiffs have no objection to providing their legal names to counsel for Defendants and the Court. They also do not intend to prevent the public from having access to the Court's rulings or from observing the proceedings of this Court under adequate protection. Plaintiffs seek only to prevent public disclosure of their identities.

Because this request is vital to protect Plaintiffs from harm and because it will not impede the public's understanding of the case or burden Defendants in any way, Plaintiffs' requests easily

---

[3] All Plaintiffs will, of course, be reachable through undersigned counsel.

satisfy the Fourth Circuit's multi-factor balancing test established in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), and should be granted.

## STATEMENT OF FACTS

### A. The Executive Orders and Agency Directives

On January 20, 2025, President Trump signed an Executive Order ("EO") prohibiting the use of federal funds to "promote gender ideology" ("Gender EO"), including ordering federal agencies to stop funding grants they believed related to this topic. On the same day, he signed his first of two executive orders terminating federal funding for any "equity related" programs ("DEI-1-EO"). The following day, President Trump signed another EO requiring executive branch agencies cut funding for grants "promoting DEIA" ("DEI-2-EO").

To effectuate these three EOs, Defendants HHS and NIH announced in February 2025 that NIH grants supporting research projects that relate to "gender identity" or "diversity, equity, and inclusion (DEI)" were now suddenly inconsistent with agency priorities and would be terminated. Throughout February and March 2025, grantees received template, boilerplate termination letters stating that their research "no longer effectuate[d] agency priorities." Most such termination letters gave no specific or individualized reason for termination, and explained that appealing the termination would be futile, as no "corrective action" could be taken to align the grant with agency priorities.

Plaintiffs, named and pseudonymized, were among the hundreds of grantees studying and supporting the health and wellness of LGBTQI+ people who had their grants terminated and their grant applications withheld from review. As the accompanying complaint details, Defendants' conduct violated the constitutional and statutory rights of Plaintiffs, and for those Plaintiffs who are healthcare providers, of their LGBTQI+ patients.

### B. The Pseudonymous Plaintiffs

Plaintiff Dr. Phoebe Poe is a researcher focusing on LGBTQI+ health at a university in Tennessee. Her work entails research into and advocacy for policy solutions to the unique healthcare challenges facing the LGBTQI+ community. Her work is wide-ranging, covering topics from HIV/AIDS to aging. Her research, which has been nationally recognized for its innovation and contribution, has been abruptly stalled due to Defendants' actions. Alongside the funding freeze, Dr. Poe has experienced harassing phone calls, hate mail, and office vandalism stemming from her research into the health of LGBTQI+ individuals.

Plaintiff Dr. Rachel Roe is a healthcare provider and researcher, specializing in healthcare for transgender patients, at an academic institution in Virginia. Her work as a doctor includes seeing patients who are experiencing a range of medical needs both related and unrelated to their gender identity. Her work with transgender patients has become increasingly difficult due to the Defendants' termination of her grant funding that had been specifically provided because of its relation to LGBTQI+ health. The combination of these forces has made it challenging and frightening for Dr. Rachel Roe to continue her work as a healthcare provider.

Plaintiff Dr. Susana Soe is an executive for a health-related nonprofit organization in Florida. Her work is focused on community psychology, including studying the effects of community health indicators on the health and wellbeing of LGBTQI+ people. While her work seeks to serve groups that have historically faced barriers to accessing adequate mental and physical healthcare—like LGBTQI+ individuals—her work benefits the entire community. Because of the termination of her grant, Dr. Soe can no longer effectuate her work, and her organization has had to lay off staff and reduce salaries. She fears that her public participation

could endanger her and her family's safety, as well as lead to retaliation against her or her organization.

In addition to Drs. Poe, Roe, and Soe, some of GLMA's health researcher members who wish to participate in this case through declarations have similar concerns for their safety and the serious risk of reputational harm and retaliation if their identities are made known to the public and individuals within federal government, without the proposed Protective Order in place. Many also fear that their involvement in this litigation could be used to retaliate against their institutions, mentors, or others associated with them.

## ARGUMENT

Federal Rule of Civil Procedure 10(a) generally requires a civil complaint to name all parties. Fed. R. Civ. P. 10(a). This rule reflects the "general presumption of openness" in civil proceedings, a presumption grounded in the public's First Amendment and common law rights. *James*, 6 F.3d at 238; *see also Doe v. Pub. Citizen,* 749 F.3d 246, 274 (4th Cir. 2014) (district court must balance "the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party.")

However, like other legal presumptions, this one can be overcome, and a party can proceed under a pseudonym in the Court's discretion. *See Doe v. Doe*, 85 F.4th 206, 211 (4th Cir. 2023). This is appropriate in cases where "privacy or confidentiality concerns are . . . sufficiently critical." *Id*. (quoting *James*, 6 F.3d. at 238). This is one of those cases. For the reasons stated below, the Court should permit Plaintiffs to proceed pseudonymously.

## I.   THE *JAMES* FACTORS WEIGHT STRONGLY IN FAVOR OF PSEUDONYMITY.

The Fourth Circuit in *James* delineated five non-exhaustive factors for courts to weigh when determining whether to grant a request to proceed pseudonymously:

[1] Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties; [3] the ages of the person whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

6 F.3d at 238 (numerals added); *see also Doe*, 85 F.4th at 211 (reciting the *James* factors as above).

Not all the *James* factors may be relevant to a given case, and there may be other factors that are relevant. *See Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016) (citing *James*, 6 F.3d at 238). "At bottom . . . the trial court must 'carefully review *all* the circumstances of the case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Id.* at 39-40 (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (emphasis in original)).

Here, the *James* factors, as applied to Phoebe Poe, Rachel Roe, and Susana Soe support granting each plaintiff's motion to proceed pseudonymously.

### A. Pseudonymous Plaintiffs' Justifications Go Beyond Avoiding Annoyance and Are Necessary to Preserve Their Privacy and Sensitive Personal Information.

"The first *James* factor requires the court to consider whether [the movant] has identified a specific sensitive and personal privacy interest, or whether she merely seeks to avoid the annoyance and criticism that comes with litigation." *Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d 724, 729 (W.D. Va. 2012).

Pseudonymous Plaintiffs' desire to proceed pseudonymously reflects the sensitive nature of their work, as well as the close relationship they have with their patients, clients, and research subjects. And while Pseudonymous Plaintiffs' identities, including those of declarant members of GLMA, are not ordinarily highly sensitive information, the nature of Pseudonymous Plaintiffs' work and the subject matter of this case makes them so. Plaintiffs' work is intertwined with matters

touching upon LGBTQI+ identities and research pertaining to the health and wellbeing of, *inter alia*, LGBTQI+ youth. These are matters that courts, including this Court, for decades, have found to be sufficiently "highly sensitive" to warrant protection. *See PFLAG, Inc. v. Trump*, No. CV 25-337-BAH, 2025 WL 510050, at *4 n.14 (D. Md. Feb. 14, 2025) (granting motion to proceed under pseudonyms when movants asserted that it was necessary to protect them "from undue harassment, discrimination, and violence because of the Minor and Adult Plaintiffs' transgender status"); *Doe v. Cath. Relief Servs.*, No. 1:20-CV-01815-JRR, 2024 WL 4335643, at *3 (D. Md. Sept. 26, 2024) ("Individuals in the LGBTQ+ community face hate, ridicule, violence and all manner of loathsome, discriminatory, and, at times, criminal treatment.");[4] *Hersom v. Crouch*, No. 2:21-CV-00450, 2022 WL 908503, at *1 (S.D.W. Va. Mar. 28, 2022) (granting motion to proceed under pseudonym when "revealing [movant's] transgender status will subject him to substantial risk of mental and physical harm"); *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 339 (E.D. Pa. 2021) (courts "have allowed anonymity due to the private and intimate nature of being transgender"); *Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) ("[T]he disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s transgender status and his diagnosed medical condition—gender dysphoria."); *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 73 (D.R.I. 1992) ("Particularly in this era of seemingly increased societal intolerance toward 'unconventional' sexual behavior, I will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure."); *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979) ("Where the issues involved are matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality or the welfare

---

[4] The court in *Doe v. Catholic Relief Services* granted the plaintiff's motion to proceed pseudonymously. *See* Order, *Doe v. Cath. Relief Servs.*, No. CV CCB-20-1815 (D. Md. Aug. 20, 2020), ECF No. 12.

rights of illegitimate children or abandoned families, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." (cleaned up)).

Moreover, the same facts that establish the risk of harm to Pseudonymous Plaintiffs and related innocent third parties, *see supra* Section I.B, "also establish that [their] request to proceed under pseudonym is made 'to preserve privacy in a matter of sensitive and highly personal nature.'" *Int'l Refugee Assistance Project v. Trump* ("*IRAP*"), No. CV TDC-17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) (quoting *James*, 6 F.3d at 238).

In sum, legitimate privacy concerns motivate Pseudonymous Plaintiffs' request for anonymity, not mere annoyance.

### B. Identification Poses a Risk of Harm to Both the Requesting Parties and Related Innocent Nonparties.

Revealing any of Plaintiffs' addresses and Pseudonymous Plaintiffs' identities would subject them, their families, their colleagues, and their institutions to unwarranted harassment and even violence, as well as retaliation.

Revealing Pseudonymous Plaintiffs' identities could expose them, their colleagues, and their families to discrimination, harassment, and even violence. There is a well-documented history of doxxing, death threats, bomb threats, and even targeted violence against providers of LGBTQI+ healthcare and supporters of the rights and healthcare of sexual and gender minorities. Ample evidence exists that "transgender individuals often face verbal and physical harassment when forced to reveal their transgender status." *Hersom*, 2022 WL 908503, at *2; *see also Arroyo González v. Rosselló Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) (concluding that forced disclosure of a transgender person's status "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger"). As the Fourth Circuit recently recognized, "transgender people have historically been subject to discrimination." *Kadel v.*

*Folwell*, 100 F.4th 122, 143 (4th Cir. 2024).  Likewise, one "need cite no authority for the proposition that homosexuals in the United States today are frequently met with scorn or hatred." *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. at 73.

Anti-LGBTQI+ attitudes show no signs of abating, and the risk of retaliation against Pseudonymous Plaintiffs is very real. If anything, animosity towards transgender people is escalating as politicians intentionally inflame prejudices, including through the actions challenged in this case. One "cannot fathom discrimination more direct than the plain pronouncement of a policy resting on the premise that the group to which the policy is directed does not exist." *PFLAG, Inc. v. Trump*, No. CV 25-337-BAH, 2025 WL 685124, at *23 (D. Md. Mar. 4, 2025).

It is well-documented that over the last few years, "there has been an escalation of organized, political hostility toward the transgender community from people with agendas to restrict access to gender-affirming care for everyone . . . ."[5] Indeed, in 2022 alone, 70% of gender-affirming care providers or their institutions received threats specific to delivering gender-affirming care, including death threats.[6] As LGBTQI+ healthcare becomes increasingly politicized and divisive, researchers and providers working in the LGBTQI+ health arena face greater threats to their ability to conduct their critical and oft lifesaving work.

What is more, unfortunately, Pseudonymous Plaintiffs are no strangers to this unfortunate history:

Dr. Poe has already faced harassment and vandalism because her research focuses on LGBTQI+ people. These threats target both Dr. Poe individually and others who work in her office.

---

[5] Katie O'Connor, Gender-Affirming Clinics Subject to Onslaught of Threats, Harassment, Psychiatry Online (Jan.27, 2023), https://archive.ph/eQMwM (last accessed May 17, 2025).

[6] Hughes, L. D., Gamarel, K. E., Restar, A. J., Sequeira, G. M., Dowshen, N., Regan, K., & Kidd, K. M. (2023). Adolescent Providers' Experiences of Harassment Related to Delivering Gender-Affirming Care. The Journal of Adolescent Health, 73(4), 672–678, https://archive.ph/aHTW6 (last accessed April 25, 2025).

These threats have also affected innocent nonparties, like her co-workers and family. Because of the heightened unrest around Dr. Poe's work, her office has installed panic buttons, scrubbed personal information from the Internet, restricted access to the office, and increased the presence of campus police on-site.

Similarly, Dr. Roe's clinic has faced threats, resulting in some transgender patients no longer coming in for treatment out of fear. Like Dr. Poe, Dr. Roe's fear of harm is not limited to herself. Threats to her clinic strike fear in the other healthcare providers and support staff working there. Innocent nonparties, like patients, face stigma. Perhaps most deeply affected are the transgender patients who decide to forgo critical medical attention rather than suffer the onslaught of harassment. The ripples of harm from Dr. Roe's public participation in this lawsuit would therefore extend far beyond herself.

Dr. Soe's work is by its nature community focused. Without funding, she and her organization struggle to connect with LGBTQI+ people seeking access to safe healthcare options. This funding termination comes at a time when many healthcare options for LGBTQI+ people are shuttering due to funding cuts, threats, harassment, and stigma. As with the sphere of harm around Drs. Poe and Roe, it is not only Dr. Soe who faces harm from her participation in the lawsuit: it is her coworkers, her network of providers, and the clients she helps to navigate an increasingly fraught and politicized healthcare environment.

In addition, Plaintiffs' concerns about retaliation from the administration are well-founded. The current administration has targeted for retaliation entities and individuals over their support

for transgender people's rights. *See, e.g., Perkins Coie LLP v. U.S. Dep't of Just.*, No. CV 25-716 (BAH), 2025 WL 1276857, at *8 (D.D.C. May 2, 2025).[7]

In sum, Plaintiffs' concerns are much more than the types of "bare assertions" that they "could be targeted for retaliation." *Doe*, F.4th at 213. And they have much more than a "general fear" of retaliation. *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022); *see also Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) ("fears of embarrassment or vague, unsubstantiated fears of retaliatory actions . . . do not permit a plaintiff to proceed under a pseudonym"). Rather, Plaintiffs here have *already* experienced more than mere embarrassment or general fear of retaliation. They have experienced acute threats to physical safety necessitating panic buttons, access restrictions, and increased police presence. These threats are far from general or speculative; they are real and ongoing.

This factor weighs heavily in favor of anonymity.

### C.  Though Plaintiffs Are Not Minors, Minor LGBTQI+ Individuals Will Be Affected By This Request.

While under the *James* factors a party's age is a relevant consideration, it is not dispositive. *See Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 302 (D. Md. 2024) (finding that anonymity was appropriate even though requesting party was not a minor). Indeed, "the plaintiff does not need to be a minor for this factor to weigh in favor of anonymity." *Hersom*, 2022 WL 908503, at *2.

And although Plaintiffs are not themselves minors, the patient populations of Pseudonymous Plaintiffs who are healthcare providers include minors, who are afforded a baseline

---

[7] *See also* Exec. Order 14246, Addressing Risks from Jenner & Block, 90 Fed. Reg. 13997 (Mar. 25, 2025) (alleging the firm "supports attacks against women and children based on a refusal to accept the biological reality of sex"); The White House, Fact Sheet: President Donald J. Trump Addresses Risks from Perkins Coie LLP (Mar. 6, 2025), *available at* this hyperlink.

anonymity under Fed. R. Civ. P. 5.2. *See* Fed. R. Civ. P. 5.2(a) (requiring the use of initials in court filings to protect the identities of minors unless they affirmatively waive that protection). The universe of transgender minors is small. In a June 2022 Report, the Williams Institute on Sexual Orientation and Gender Identity Law and Public Policy determined that roughly just 1.43% of the U.S. population aged 13 to 17 identified as transgender. As such, the pool of transgender adolescents receiving gender-affirming care within the geographic areas in which Pseudonymous Plaintiffs who are healthcare providers practice is even smaller. Revealing the identities of Pseudonymous Plaintiffs who are healthcare providers, like Dr. Roe, could therefore allow an enterprising individual to connect the dots between provider and patients. Pseudonymity therefore assists in preserving transgender adolescents' anonymity as envisioned by the Rules of Civil Procedure. *Cf. S.E.S. v. Galena Unified Sch. Dist. No. 499*, No. 18 Civ. 2042, 2018 WL 3389878, at *2 (D. Kan. July 12, 2018) (permitting plaintiffs to proceed anonymously because the parents and child "share common privacy interests based on their inseparable relationship to one another").

This factor also supports anonymity.

**D. Defendants Are Government Agencies and Officials.**

"The fourth factor favors anonymity where a plaintiff is suing a government entity." *Hersom*, 2022 WL 908503, at *2. Here, the only defendants are two federal government agencies – NIH and HHS – and two government officials sued in their official, not individual, capacities.

Courts are much more likely to permit pseudonymous suits against the government. *See Doe v. Virginia Polytechnic Inst. & State Univ.*, WL 5929647 (W.D. Va. Nov. 13, 2018) ("Courts are more likely to allow a plaintiff to proceed under a pseudonym when the plaintiff challenges the government or government activity."); *see also Yacovelli v. Moeser*, No. 1:02CV596, 2004 WL 1144183 at *8 (M.D.N.C. May 20, 2004) ("When a plaintiff challenges the government or government activity, courts are more like to permit plaintiffs to proceed under a pseudonym than

if an individual has been accused publicly of wrongdoing."); *IRAP*, 2017 WL 818255 at *3 ("Use of pseudonyms is more likely to be appropriate in cases challenging government activity because there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest." (citing *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. Feb. 19, 2003))).

Unlike a private party, whose reputation may be harmed by the mere filing of a lawsuit, "[a]ctions against the government do no harm to its reputation." *Doe v. Anne Arundel Cnty.*, No. 1:23-CV-03451-JRR, 2024 WL 2053719, at *3 (D. Md. May 8, 2024) (quoting *Doe v. Pittsylvania Cty.,* 844 F. Supp. 2d at 730). This is true particularly when, as here, the case involves "a challenge to the constitutional, statutory, or regulatory validity of government activity." *IRAP*, 2017 WL 818255 at *3. This case concerns Defendants government entities' policies, practices, and procedures that result in numerous harms to Plaintiffs, and thus raises constitutional and statutory legal challenges that do not turn on the individual Plaintiffs' identities. The Court therefore should protect Pseudonymous Plaintiffs' identities by allowing them to proceed using pseudonyms.

As such, the fourth factor of *James* weighs in favor of pseudonymity as this is a suit against the government implicating purely legal rights.

### E. Pseudonymity Does Not Undermine the Public's Interest in Open Judicial Proceedings.

Although not explicit in *James*, the Fourth Circuit has subsequently ruled that "the public's interest in open proceedings must inform a district court's pseudonymity calculus." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014).

Allowing Plaintiffs to proceed under pseudonyms does not deny the public its right to attend the proceedings or inspect the court's opinions and orders resolving the underlying constitutional issue. *See Alger*, 317 F.R.D. at 39; *see also Doe v. Cath. Relief Servs.*, 2024 WL

13

4335643, at *4 ("Allowing a party to proceed by pseudonym does not deprive the public from knowledge of the case or many of its facts; instead, it deprives the public only of identifying information of a party."). The public is still free to examine pleadings, evaluate the behavior of the parties and the judiciary, and follow the resolution of claims presented.

The public interest in Plaintiffs' identities is further diminished here because of the uniquely legal nature of Plaintiffs' claims. Plaintiffs maintain that the agency directives and subsequent actions implementing them and the Gender, DEI-1, and DEI-1 EOs were *ultra vires* and violate their constitutional and statutory rights. They do not seek damages. They seek a court order declaring these directives, grant terminations, and additional related actions to be unlawful and enjoining enforcement of these discriminatory directives. In such a case, "knowing the Plaintiffs' identities lends little to the public's ability to follow the proceedings or understand the disposition of the case." *Doe v. City of Apple Valley*, 2020 WL 1061442, at *2 (D. Minn. Mar. 5, 2020); *see also Doe v. El Paso*, 2015 WL 1507840, at *4 (W.D. Tex. April 1, 2015) (distinguishing between legal challenges and individual damages actions where parties' identity might assist discovery). As many courts have held, the public interest pertains to the outcome of the litigation, not the individual participants. *See*, *e.g.*, *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (favoring anonymity where, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities"); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (same); *Doe v. Harris*, 2014 WL 4207599, at *2 (W.D. La. Aug. 25, 2014) ("[M]any of the cases allowing plaintiffs to proceed anonymously involve challenges to the constitutional, statutory, or regulatory validity of governmental activity.").

14

In sum, Plaintiffs' claims turn on strictly legal questions of statutory and regulatory interpretation and constitutional jurisprudence, not on Plaintiffs' credibility, reliability, special expertise as a witness, or any valuation of harm experienced by a specific Plaintiffs. As a result, Plaintiffs' request does not impede the public's interest in open judicial proceedings.

### F. There Is No Risk of Unfairness to Defendants If Plaintiffs Proceed Pseudonymously.

The final *James* factor considers any prejudice of proceeding pseudonymously on the opposing party. For two reasons, there is no risk of prejudice or unfairness to Defendants if the Court grants Pseudonymous Plaintiffs' request for a protective order and allows them to proceed under pseudonyms.

*First*, as already noted, as federal officials sued only in their official capacity, Defendants HHS Secretary Kennedy and NIH Director Bhattacharya (as well as Defendant federal executive agencies) do not suffer the same reputational harm or other disadvantages that private defendants might face if litigating against an anonymous adversary. That is because the "government is not vulnerable to similar reputational harm [as a private party], particularly in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity." *Doe v. Virginia Polytechnic Inst., & State Univ.*, No. 7:21-CV-378, 2022 WL 972629 at *4 (W.D. Va. Mar. 18, 2020) (citation omitted); *see also Wynne & Jaffe*, 599 F.2d at 713 (describing suits challenging the constitutional validity of government activity as involving "no injury to the Government's 'reputation'").

*Second*, Defendants will suffer no unfairness or prejudice from Pseudonymous Plaintiffs proceeding under pseudonyms because their counsel will be provided with each Plaintiff's identifying information under a protective order. *See, e.g., Doe v. Univ. of Maryland Med. Sys. Corp.*, No. SAG-23-1572, 2023 WL 3949737, at *3 (D. Md. June 12, 2023) ("[T]here is no risk of

prejudice to Defendants by allowing this action to proceed anonymously, given that Defendants are aware of Plaintiff's identity."); *Doe v. Virginia Polytechnic*, 2020 WL 1287960, at *5 ("[T]here is no risk [of unfairness to defendants] because the defendants are aware of Doe's and Roe's identities."); *Foster*, 2019 WL 329548 at *2 ("[T]he relief sought by this motion will not prejudice defendants [because plaintiff] recites that he does not seek to withhold his identity from defendants but only wishes to prevent disclosure of his identity in public documents."). Subject to a protective order, Defendants' counsel will be free to investigate and validate facts related to Pseudonymous Plaintiffs. There is no prejudice to Defendants if Pseudonymous Plaintiffs' identities are protected from public dissemination.

This final *James* factor weighs heavily in favor of permitting Plaintiffs to proceed pseudonymously.

## II. THE COURT SHOULD WAIVE LOCAL RULE 102.2(a)'S REQUIREMENT TO PROVIDE ADDRESSES IN THE COMPLAINT CAPTION.

The same concerns that underlie Pseudonymous Plaintiffs' request to proceed under pseudonyms apply to Plaintiffs' request for waiver of the requirement in Local Rule 102.2(a) that they provide their addresses in the caption of the Complaint. This waiver request applies to all Plaintiffs who, like Pseudonymous Plaintiffs, may face discrimination, harassment, threats of or actual violence due to the nature of their work if their addresses become public.

Disclosure of Pseudonymous Plaintiffs' addresses would erase the protection of confidentiality they seek because their identities could readily be determined from their addresses. For this reason, this District's courts regularly waive this requirement when permitting plaintiffs to proceed pseudonymously. *See*, *e.g.*, *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 302 (D. Md. 2024) ("Court concludes that Plaintiff will be (1) permitted to proceed as Jane Doe, and

(2) permitted to omit her home address from the case caption."). Pseudonymous Plaintiffs respectfully request that the Court do so here, too.

Additionally, the undersigned counsel anticipates that certain members of the named associational plaintiff, GLMA, will file declarations in support of the injunctive relief requested in this case. For the same reasons the Pseudonymized Plaintiffs request their participation in the lawsuit be anonymized—threats, retribution, and harassment—Plaintiffs respectfully ask the Court to allow non-plaintiff declarant members of GLMA who have the same legitimate concerns to file said declarations under pseudonym. *See* Agreed Protective Order Regarding Certain Organizational Declarants, *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, No. 1:25-cv-10787-WGY (D. Mass. May 5, 2025), ECF No. 63 (granting protective order prohibiting disclosure of identities of organizational declarants "to ensure that the fact of their participation in th[e] litigation cannot be used in a retaliatory manner").

For the same reasons stated above—including to prevent harassment, retaliation, and potential violence—the remaining non-pseudonymous Plaintiffs likewise request that the Court waive the requirement to provide their addresses in the Complaint's caption, as courts regularly do. *See Darden Restaurants, Inc.*, 736 F.3d. at 303; *Casa de Maryland, Inc. v. Trump*, No. GJH-18-845, 2018 WL 1947075 at *2 (D. Md. Apr. 25, 2018).

## CONCLUSION

The public benefits when constitutional rights and liberties are vindicated. "There can be few matters of greater public interest in this country than protecting the constitutional rights of its citizens." *Shilling v. United States*, WL 926866, at *28 (W.D. Wash. Mar. 27, 2025). Here, the American public benefits from Plaintiffs' willingness to challenge Defendants' Agency Directives, grant terminations, and refusal to fund research relating to LGBTQI+ health—actions that already

17

have caused harm and will continue to cause harm if not enjoined. To require the public dissemination of the Pseudonymous Plaintiffs' identities, and the addresses of all Plaintiffs, would inflict gratuitous injury, would undermine the relief they seek, and is not in the public interest. What's more, preventing such dissemination would not prejudice Defendants' ability to defend against Plaintiffs' legal claims.

For these and the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to proceed under pseudonyms, to waive the requirement to provide their addresses under Local Rule 102.2(a), and for a protective order limiting disclosure of their identities, as well as declarant members of GLMA, to counsel for Defendants and the Court.

Dated: May 21, 2025

Respectfully submitted,

_____/s/_____
Ruben F. Reyna

Justin D. Kingsolver*
**Bryan Cave Leighton Paisner LLP**
1155 F St. NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
justin.kingsolver@bclplaw.com

Elizabeth P. Hecker*
Anuj Vohra*
Ruben F. Reyna (D. Md. Bar 14949)
Heather Sanborn*
Tai Williams*
**Crowell & Moring LLP**
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
ehecker@crowell.com
avohra@crowell.com

Omar Gonzalez-Pagan***
**Lambda Legal Defense
  and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: (212) 809-8585
Facsimile: (855) 535-2236
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy**
**Lambda Legal Defense
  and Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006
Telephone: (202) 804-6245
Facsimile: (855) 535-2236
kloewy@lambdalegal.org

Nathan Maxwell*

rreyna@crowell.com
hsanborn@crowell.com
taiwilliams@crowell.com

Alexis Ward*
**Crowell & Moring LLP**
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
award@crowell.com

Michael Vine*
**Crowell & Moring LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
mvine@crowell.com

Alexander Rosen*
Jacob Zucker*
**Crowell & Moring LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
arosen@crowell.com
jzucker@crowell.com

**Lambda Legal Defense
  and Education Fund, Inc.**
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Telephone: (312) 663-4413
Facsimile:  (855) 535-2236
nmaxwell@lambdalegal.org

Pelecanos**
**Lambda Legal Defense
  and Education Fund, Inc.**
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: (213) 351-6051
Facsimile:  (855) 535-2236
pelecanos@lambdalegal.org

K. Lee Marshall*
Carlie Tenenbaum*
**Bryan Cave Leighton Paisner LLP**
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
lee.marshall@bclplaw.com
carlie.tenenbaum@bclplaw.com

* *Pro hac vice* applications pending.

** *Pro hac vice* applications forthcoming.

*** Application for admission to D. Md. Bar
approved; swearing in pending.