**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division: Montgomery County)**

|  |  |
|---|---|
| AMERICAN ASSOCIATION OF PHYSICIANS FOR HUMAN RIGHTS, INC. d/b/a GLMA: HEALTH PROFESSIONALS ADVANCING LGBTQ+ EQUALITY, *et al.*, <br><br>         *Plaintiffs*, <br><br>     v. <br><br> NATIONAL INSTITUTES OF HEALTH, *et al.*, <br><br>         *Defendants.* | Civil Action No. 8:25-cv-01620-LKG |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION & STAY PENDING JUDICIAL
REVIEW PURSUANT TO 5 U.S.C. § 705**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.  This Court, Not the Court of Federal Claims, Has Jurisdiction Over This
    Case..........................................................................................................1

    A.  The Fourth Circuit's emergency stay opinion in *Sustainability
    Institute*, which involved different facts and different claims, does
    not bind this Court. .........................................................................2

    B.  The Court of Federal Claims lacks jurisdiction over Plaintiffs'
    primary claims and cannot grant the core relief Plaintiffs seek............3

    C.  Courts are rightfully rejecting the Administration's ongoing effort
    to transfer grant termination cases to the Court of Federal Claims. ....5

II.  Plaintiffs Have Standing. ..........................................................................6

III.  Defendants' Challenged Conduct Violates the Equal Protection Guarantee...................8

    A.  Defendants' discriminatory conduct injured Plaintiffs. .......................8

    B.  The Court should reject Defendants' call to ignore Fourth Circuit
    precedent. ........................................................................................9

    C.  Defendants' conduct fails even rational basis scrutiny........................10

IV.  The Agency Directives and Defendants' Conduct Violate Section 1557 of the
    ACA. ......................................................................................................12

V.  Defendants' Conduct Violates the Constitutional Separation of Powers. .........................12

VI.  Defendants' Conduct Violates the APA. ....................................................13

    A.  The Directives and Challenged Agency Actions Are "Final Agency
    Actions." ........................................................................................13

    B.  Defendants' Conduct Was Not "Committed to Agency Discretion."................15

    C.  Defendants' Actions Were Not "The Result of Reasoned Decision-
    Making." ........................................................................................16

    D.  Defendants' Actions Violate Their Own Regulations. ......................17

    E.  Plaintiffs Need Not Await the Outcome of Futile "Appeals."............18

VII.  Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction.....................19

VIII.  The Balance of the Equities and Public Interest Favor Plaintiffs. ...................19

IX.  The Court Should Waive Bond or Impose a Nominal Bond. ........................20

CONCLUSION......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*,
  770 F. Supp. 3d 822 (D. Md. 2025) .................................................................15, 17

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA*,
  2025 WL 1206246 (D. Md. Apr. 17, 2025), *appeal filed*, No. 25-1411 (4th
  Cir.) .............................................................................................................14, 20

*Am. Fed'n of Tchrs. v. Dep't of Educ.*,
  2025 WL 1191844 (D. Md. Apr. 24, 2025) ...........................................................14, 15

*Am. Pub. Health Ass'n v. NIH*,
  2025 WL 1548611 (D. Mass. May 30, 2025) .............................................................6

*Ass'n of Am. Univs. v. Dep't of Energy*,
  2025 WL 1414135 (D. Mass. May 15, 2025) ..............................................................15

*Bostock v. Clayton County, Ga.*,
  590 U.S. 644 (2020) ..............................................................................................10

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ...........................................................................................2, 6

*Carruth v. United States*,
  224 Ct. Cl. 422 (1980) ..........................................................................................4

*Castendet-Lewis v. Sessions*,
  855 F.3d 253 (4th Cir. 2017) ....................................................................................2

*Chamblee v. Espy*,
  100 F.3d 15 (4th Cir. 1996) ....................................................................................14

*Child Trends, Inc. v. Department of Education*,
  2025 WL 1651148 (D. Md. June 11, 2025).................................................................3

*Citizens for Responsible Curriculum v. Montgomery Cnty. Pub. Schs.*,
  2005 WL 1075634 (D. Md. May 5, 2005).................................................................20

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...............................................................................................7

*Climate United Fund v. Citibank, N.A.*,
  2025 WL 1131412 (D.D.C. Apr. 16, 2025) ..............................................................15

*Cmty. Legal Servs. in E. Palo Alto v. HHS,*
   137 F.4th 932 (9th Cir. 2025) ............................................................................20

*Cummings v. Premier Rehab Keller, P.L.L.C.,*
   596 U.S. 212 (2022)...........................................................................................4

*Dep't of Com. v. New York,*
   588 U.S. 752 (2019)...........................................................................................7

*Department of Education v. California,*
   145 S. Ct. 966 (2025)........................................................................................5

*Doe #1 v. Trump,*
   957 F.3d 1050 (9th Cir. 2020) .........................................................................20

*Doe v. Chao,*
   511 F.3d 461 (4th Cir. 2007) ...........................................................................10

*Fain v. Crouch,*
   540 F. Supp. 3d 575 (S.D.W. Va. 2021)...........................................................8

*FDA v. R.J. Reynolds Vapor Co.,*
   605 U.S. __, 2025 WL 1716135 (June 20, 2025) ...........................................6

*Grimm v. Gloucester County School Board,*
   972 F.3d 586 (4th Cir. 2020) .............................................................................9

*Healthy Teen Network v. Azar,*
   322 F. Supp. 3d 647 (D. Md. 2018)................................................................18

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
   174 F.3d 411 (4th Cir. 1999) ...........................................................................20

*Houghton v. Shafer,*
   392 U.S. 639 (1968)........................................................................................18

*Joshua v. United States,*
   17 F.3d 378 (Fed. Cir. 1994)............................................................................4

*Kadel v. Folwell,*
   100 F.4th 122 (4th Cir. 2024) ......................................................................9, 10

*Kadel v. N.C. State Health Plan for Tchrs. & State Emps.,*
   12 F.4th 422 (4th Cir. 2021) .............................................................................4

*Kanemoto v. Reno,*
   41 F.3d 641 (Fed. Cir. 1994)............................................................................2

*Martin Luther King, Jr. Cnty. v. Turner*,
   2025 WL 1582368 (W.D. Wash. June 3, 2025), *appeal filed*, No. 25-3664 (9th
   Cir.) ...................................................................................................................................15, 20

*Maryland v. Corporation for National & Community Service*,
   2025 WL 1585051 (D. Md. June 5, 2025) ...........................................................................5, 6

*Massachusetts v. Kennedy*,
   2025 WL 1371785 (D. Mass. May 12, 2025) .............................................................. *passim*

*Massachusetts v. NIH*,
   770 F. Supp. 3d 277 (D. Mass. 2025), *appeal filed*, No. 25-1344 (1st Cir.) ...................17, 20

*Mayor & City Council of Baltimore v. Trump*,
   416 F. Supp. 3d 452 (D. Md. 2019) ...................................................................................14, 15

*McCarthy v. Madigan*,
   503 U.S. 140 (1992) ...............................................................................................................19

*Me. Cmty. Health Options v. United States*,
   590 U.S. 296 (2020)...................................................................................................................5

*Minton v. St. Bernard Par. Sch. Bd.*,
   803 F.2d 129 (5th Cir. 1986) ..................................................................................................16

*Miranda v. Garland*,
   34 F.4th 338 (4th Cir. 2022) ...................................................................................................19

*Morris v. State of Md.*,
   908 F.2d 967 (4th Cir. 1990) (unpublished) ..........................................................................19

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
   767 F. Supp. 3d 243 (D. Md. 2025) ........................................................................................20

*Nat'l Mining Ass'n v. Jackson*,
   768 F. Supp. 2d 34 (D.D.C. 2011) ..........................................................................................13

*Neb. Pub. Power Dist. v. United States*,
   590 F.3d 1357 (Fed. Cir. 2010).................................................................................................2

*Oliver v. Baity*,
   208 F. Supp. 3d 681 (M.D.N.C. 2016) .................................................................................7, 12

*People for Ethical Treatment of Animals, Inc. v. Tabak*,
   662 F. Supp. 3d 581 (D. Md. 2023).........................................................................................15

*Pers. Adm'r of Mass. v. Feeney*,
   442 U.S. 256 (1979)................................................................................................................11

iv

*PFLAG, Inc. v. Trump*,
    769 F. Supp. 3d 405 (D. Md. 2025) ............................................................... *passim*

*Phillips v. United States*,
    No. 17-968C, 2017 WL 5248201 (Fed. Cl. Nov. 13, 2017) .................................................4

*Pinchback v. Armistead Homes Corp.*,
    907 F.2d 1447 (4th Cir. 1990) ...........................................................................8

*Pol'y & Rsch., LLC v. DHHS*,
    313 F. Supp. 3d 62 (D.D.C. 2018) ...................................................15, 16, 17, 18

*Randall v. United States*,
    95 F.3d 339 (4th Cir. 1996) .............................................................................5

*Retail Indus. Leaders Ass'n v. Fielder*,
    475 F.3d 180 (4th Cir. 2007) ...........................................................................8

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ...........................................................................2

*Romer v. Evans*,
    517 U.S. 620 (1996) .......................................................................................11

*Ross v. United States*,
    122 Fed. Cl. 343 (2015) ..................................................................................4

*San Francisco AIDS Foundation v. Trump*,
    2025 WL 1621636 (N.D. Cal. June 9, 2025) ................................................. *passim*

*Scott v. Greenville County*,
    716 F.2d 1409 (4th Cir. 1983) .......................................................................8, 9

*Skelton v. Quinn*,
    2012 WL 1030385 (D.S.C. Mar. 26, 2012) .....................................................4

*Smith v. United States*,
    709 F.3d 1114 (Fed. Cir. 2013).......................................................................4

*Spain v. United States*,
    277 F. App'x 988 (Fed. Cir. 2008) .................................................................4

*Strickland v. United States*,
    32 F.4th 311 (4th Cir. 2022) ...........................................................................3

*Sustainability Inst. v. Trump*,
    2025 WL 1486978 (D.S.C. Apr. 29, 2025), *appeal filed*, No. 25-1575 (4th
    Cir.) ..........................................................................................................3, 4, 15

*Sustainability Institute v. Trump*,
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025)................................2, 3, 4

*Taylor v. Grubbs*,
    930 F.3d 611 (4th Cir. 2019) ..............................................................................10

*Thetford Props. IV Ltd. P'ship v. HUD*,
    907 F.2d 445 (4th Cir. 1990) ..............................................................................18

*U.S. Dep't of Agric. v. Moreno*,
    413 U.S. 528 (1973)..............................................................................................11

*United States v. Roof*,
    10 F.4th 314 (4th Cir. 2021) ................................................................................13

*United States v. Skrmetti*,
    605 U.S. __, 2025 WL 1698785 (June 18, 2025) ..........................................10, 11

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)..............................................................................................11

*Washington v. Trump*,
    768 F. Supp. 3d 1239 (W.D. Wash. 2025)......................................................19, 20

*Webster v. Doe*,
    486 U.S. 592 (1988)................................................................................................3

*Wilcox v. Lyons*,
    970 F.3d 452 (4th Cir. 2020) ..................................................................................9

*Yesteryears, Inc. v. Waldorf Rest., Inc.*,
    730 F. Supp. 1341 (D. Md. 1989) ...........................................................................9

*Zuber v. Allen*,
    396 U.S. 168 (1969)..............................................................................................13

**Statutes**

5 U.S.C. § 701(a)(2)....................................................................................................15

5 U.S.C. § 702 ...............................................................................................................5

42 U.S.C. § 241(a)(3)...................................................................................................12

42 U.S.C. § 282(b)(6) ..................................................................................................18

42 U.S.C. § 283p...........................................................................................................15

42 U.S.C. § 18116(a) .....................................................................................................4

5 U.S. § 706 .................................................................................................................2

**Regulations**

2 C.F.R. § 200.340 ........................................................................................................17

45 C.F.R. § 75.372(a).............................................................................................17, 18

45 C.F.R. § 371 ...........................................................................................................18

**Other Authorities**

*Nondiscrimination in Health Programs and Activities*, 89 Fed. Reg. 37522, 37594
    (May 6, 2024).........................................................................................................12

## INTRODUCTION

One "cannot fathom discrimination more direct than the plain pronouncement of a policy resting on the premise that the group to which the policy is directed does not exist." *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 444 (D. Md. 2025). Yet, as part of the administration's alarming campaign to purge sexual and gender minorities from public life, Defendants have prohibited NIH funding for research relating to LGBTQI+ people or the health disparities affecting them. This, in Judge William Young's words, is the "darker aspect" of Defendants' actions, as it is "palpably clear" that "discrimination against America's LGBTQ community" is behind these actions.[1]

Defendants present no legitimate argument that their actions are lawful, and their jurisdictional arguments have no merit, as the Court of Federal Claims ("CFC") has no jurisdiction over Plaintiffs' statutory and constitutional discrimination claims or to provide the injunctive relief Plaintiffs seek. As such, the Agency Directives and Challenged Agency Actions must be enjoined.

## ARGUMENT

### I.    This Court, Not the Court of Federal Claims, Has Jurisdiction Over This Case.

Plaintiffs are neither the awardees of any grants nor the parties to any contract. Rather, Plaintiffs are parties who have been harmed by Defendants' conduct, as have their LGBTQI+ patients and research participants. They do not seek damages for past harm. They seek prospective declaratory and injunctive relief, namely, for the Court to declare the Agency Directives and Challenged Agency Actions unlawful and/or unconstitutional, to vacate the same, and to permanently enjoin Defendants from continuing to effectuate them. As explained in Plaintiffs' opening brief (at 10–18) and below, decades of precedent refutes Defendants' assertion that this

---

[1] Lauran Neergaard, *Judge rules some NIH grant cuts illegal, saying he's never seen such discrimination in 40 years*, Associated Press (June 16, 2025), https://tinyurl.com/mrsbm3nc. For the Court's convenience, Plaintiffs requested the transcript of the June 16 hearing in *Massachusetts v. Kennedy*, No. 1:25-cv-10814-WGY (D. Mass.). On June 19, the court reporter advised that he "plan[s] to get this out early next week." Plaintiffs will promptly file it upon receipt.

case belongs in the CFC, whose authority to award a "naked money judgment" under the Tucker Act does not provide Plaintiffs with an "adequate remedy" for their exclusively *statutory and constitutional* (*i.e.*, non-contract) *claims* under the Fifth Amendment's Equal Protection Component, Section 1557 of the Affordable Care Act ("ACA"), and Section 706 of the Administrative Procedure Act ("APA"). *Kanemoto v. Reno*, 41 F.3d 641, 645 (Fed. Cir. 1994); *see also Neb. Pub. Power Dist. v. United States*, 590 F.3d 1357, 1376 (Fed. Cir. 2010) (claims in district court "not impliedly forbidden by the Tucker Act" where court "was interpreting statutory rights, not rights under a contract"). This "dispositive distinction" ends the matter. *Kanemoto*, 41 F.3d at 645. Indeed, Defendants admit the CFC cannot grant any of the relief Plaintiffs seek. Opp. 17. Controlling Supreme Court precedent, meanwhile, confirms this Court's jurisdiction over Plaintiffs' claims. *See Bowen v. Massachusetts*, 487 U.S. 879 (1988).

### A. The Fourth Circuit's emergency stay opinion in *Sustainability Institute*, which involved different facts and different claims, does not bind this Court.

Defendants overstate the import of a Fourth Circuit motion panel's recent divided unpublished order granting an emergency stay pending appeal in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025). That order does not bind this Court—or even the merits panel in that case—in any way. *See Castendet-Lewis v. Sessions*, 855 F.3d 253, 259 (4th Cir. 2017) ("[T]he law of the case doctrine does not bar us from revisiting a prior ruling of a motion panel on the Court's jurisdiction.") (cleaned up); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 244 (5th Cir. 2020) ("[A] decision by [a] motions panel granting a stay . . . has no precedential force and is not binding on the merits panel, leaving it as a writing in water[.]") (Higginbotham, J., concurring). Defendants admit as much. Opp. 13 (recognizing *Sustainability Institute* does "not entirely foreclose[]" the holdings of the many courts that have rejected Defendants' Tucker Act argument). Indeed, the panel's nonbinding decision may be short-lived—

the plaintiffs moved for *en banc* review, and the full court has called for a response by June 23. *See Sustainability Inst.*, No. 25-1575 (4th Cir.), ECF Nos. 41, 47.[2]

Regardless, Plaintiffs' claims here differ meaningfully from those at issue in that case. For one, the relief sought (and temporarily granted) there was to "order the Government 'to restore Plaintiffs['] access to grant funds immediately' and prohibit the Government from 'freezing, terminating or otherwise interfering with the funding of [those] Grants[.]'" *Sustainability Inst.*, 2025 WL 1587100, at *1. By contrast, Plaintiffs here ask the Court to set aside—and to enjoin Defendants from effectuating—the Agency Directives and Challenged Agency Actions, not just to simply to restore and prohibit the future freezing of grant funds. For another, the *Sustainability* plaintiffs' claims (whether framed as *ultra vires* or APA claims) were limited to excess-of-authority arguments. By contrast, Plaintiffs here present constitutional and statutory arguments that go far beyond the excess-of-authority arguments at issue in *Sustainability Institute*. The nature of the claims and the relief sought in this case readily and starkly distinguishes this case.[3]

## B. The Court of Federal Claims lacks jurisdiction over Plaintiffs' primary claims and cannot grant the core relief Plaintiffs seek.

At the heart of Plaintiffs' Complaint is the claim that Defendants discriminated against them and their LGBTQI+ patients and subjects based on sex, sexual orientation, and transgender

---

[2] The panel's decision in *Sustainability Institute* is in tension with *Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022) (sovereign immunity does not apply in suit seeking equitable relief for constitutional violations), and *Webster v. Doe*, 486 U.S. 592, 603 (1988) (statute must not be construed to preclude judicial review of constitutional claims absent "clear" statement from Congress).

[3] For the same reasons, *Child Trends, Inc. v. Department of Education*, 2025 WL 1651148 (D. Md. June 11, 2025), is inapposite. In *Child Trends*, the *only* constitutional issue was an *ultra vires* claim alleging that the defendants lacked authority to take the challenged actions. *Id.* at *4, *7 (describing requested relief in *Sustainability Institute* as "nearly identical to the relief sought here"). The court noted the *Sustainability Institute* panel's "skepticism that *ultra vires* claims … would provide a detour around the Tucker Act." *Id.* at *7 (cleaned up). The *Child Trends* court *rejected* the defendants' Tucker Act argument regarding the termination of two entire grant programs, pointing out that the plaintiffs "do not base their Program Claims on [their individual] agreements, or even cite to the text of the agreements as a source for their claims." *Id.* at *8. The same is true here. Br. 17.

status, in violation of the Constitution's equal protection guarantee and Section 1557 of the ACA.[4] To Plaintiffs' knowledge, no court has *ever* held that held that such claims may be adjudicated in the CFC, or that monetary damages (the only relief the CFC can award) are adequate to address them. Indeed, "[a]bsent any pleading of a statute, regulation, constitutional provision or other basis mandating payment by the government[,] a claim is insufficient to invoke the jurisdiction of the Court of Federal Claims." *Ross v. United States*, 122 Fed. Cl. 343, 349 (2015) (cleaned up); *accord Phillips v. United States*, No. 17-968C, 2017 WL 5248201, at *3 (Fed. Cl. Nov. 13, 2017) ("[I]f the Court finds that the source of law alleged is not money-mandating, the Court must dismiss the case for lack of subject-matter jurisdiction."). Defendants' brief lacks any contrary authority.

Accordingly, courts repeatedly have held that the CFC *lacks* jurisdiction to hear equal protection claims because they are not money-mandating claims. For example, in *Smith v. United States*, the Federal Circuit explained that "[t]o be cognizable under the Tucker Act, the claim must be for money damages against the United States, and the substantive law must be money-mandating." 709 F.3d 1114, 1116 (Fed. Cir. 2013); *see also Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994) (CFC "is a court of specific civil jurisdiction" that lacks jurisdiction over claims under Fifth Amendment because it "do[es] not provide for the payment of monies"); *Spain v. United States*, 277 F. App'x 988, 989 (Fed. Cir. 2008); *Carruth v. United States*, 224 Ct. Cl. 422, 445 (1980); *Skelton v. Quinn*, 2012 WL 1030385, at *3 (D.S.C. Mar. 26, 2012).

The CFC similarly lacks jurisdiction over Plaintiffs' Section 1557 claim. Section 1557 incorporates the "rights and remedies" of other civil rights statutes, including the right to sue in district court, *see Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022), and has its own waiver of sovereign immunity. *See* 42 U.S.C. § 18116(a); *Kadel v. N.C. State Health Plan*

---

[4] The *Sustainability Institute* plaintiffs brought a First Amendment claim, but the district court did not enter relief on that claim and it was not part of the panel's consideration. *See Sustainability Inst.*, No. 25-1575, ECF No. 41, at 5 n.1.

*for Tchrs. & State Emps.*, 12 F.4th 422, 439 (4th Cir. 2021). Though Plaintiffs do not seek money damages, damages claims under Section 1557 do not depend on the sovereign immunity waivers in the Tucker Act or APA (*see* 5 U.S.C. § 702) and are not subject to the Tucker Act's exclusion of such claims. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323–25 (2020).

Nor does the CFC have authority to award the primary relief Plaintiffs seek—an order declaring unlawful and enjoining enforcement of the Agency Directives and Challenged Agency Actions. Compl. 40 (Prayer for Relief). As Defendants admit: "the [CFC] cannot provide the precise relief requested here" (Opp. 17)—an admission fatal to Defendants' Tucker Act argument. *See Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996) (rejecting Defendants' argument where "[t]he injunctive relief requested by Plaintiff would not be available under the Tucker Act").

### C. Courts are rightfully rejecting the Administration's ongoing effort to transfer grant termination cases to the Court of Federal Claims.

A multitude of courts have rejected Defendants' Tucker Act arguments. *See* Br. 10-18; *see also* **Appendix A**. In *San Francisco AIDS Foundation v. Trump*, 2025 WL 1621636, at *11– 12 (N.D. Cal. June 9, 2025) ("*SFAF*"), the district court rejected the government's argument that the plaintiffs' constitutional challenge to two executive orders relating to "DEI" and "gender ideology" belonged in the CFC. The court held that the plaintiffs' claims were not "at their essence" contract claims because neither "the source of the rights claimed" nor the "remedies sought" were "contractually based." *Id.* at *11 (cleaned up). Rather, "[p]laintiffs' claims [we]re all based upon the Constitution" including the Fifth Amendment. *Id.* The *SFAF* court distinguished *Department of Education v. California*, 145 S. Ct. 966 (2025), on the ground that it "involved neither claims asserting the infringement of constitutional rights, a request for declaratory judgment, nor a request for injunctive relief preventing future harm." *Id.* at *12.

Similarly, in *Maryland v. Corporation for National & Community Service*, 2025 WL

1585051, at *23 (D. Md. June 5, 2025), the court found that claims challenging the termination of grants and dismantling of the AmeriCorps program, which asserted rights "separate and apart from any rights [they] ha[d] under the grants," belonged in federal district court, not the CFC. The *Maryland* court did not consider the request for reinstatement of their grants to be controlling either, explaining that the fact that "the relief requires AmeriCorps to ultimately disburse grant funds does not mean monetary damages are the essence of the relief." *Id.* at *25. Rather, the court emphasized that "the Tucker Act does not provide the [plaintiffs] with an adequate remedy." *Id.* at *26. Finally, the court discounted *California*'s import, which was "not a ruling on the merits," and in any case, was "factually distinguishable" because in *California*, unlike in *Maryland*, the "terms and conditions of each individual grant award were at issue." *Id.* at *27 (cleaned up).

Finally, in *Massachusetts v. Kennedy*, 2025 WL 1371785, at *6, *8 (D. Mass. May 12, 2025), the court rejected Defendants' Tucker Act argument in another matter involving the termination of NIH grants, recognizing that *California* was "not binding" and that *Bowen* continues to provide the proper framework for determining jurisdiction. *See also Am. Pub. Health Ass'n v. NIH*, 2025 WL 1548611, at *6 (D. Mass. May 30, 2025). The *Kennedy* court held that the action was "not one of contract," but rather aimed "to stop the [defendants] from violating the statutory grant-making architecture created by Congress, replacing Congress' mandate with new policies that directly contradict that mandate, and exercising authority arbitrarily and capriciously, in violation of federal law and the Constitution." *Kennedy*, 2025 WL 1371785, at *9. Thus, "[t]he Tucker Act [did] not divest th[e] Court of jurisdiction." *Id.*

## II. Plaintiffs Have Standing.

Defendants do not dispute Plaintiffs' standing to challenge the Agency Directives and Challenged Agency Actions. Nor can they. Plaintiffs are clearly "adversely affected or aggrieved" parties. *See generally FDA v. R.J. Reynolds Vapor Co.*, 605 U.S. __, 2025 WL 1716135 (June 20,

2025). They also do not dispute that the Healthcare Provider Plaintiffs have third-party standing on behalf of their LGBTQI+ patients who are deprived of federally funded research involving their health needs or GLMA's associational standing. Br. 8; *see also SFAF*, 2025 WL 1621636, at *12–13. Defendants therefore concede this point. *See Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016).

Defendants' sole contention regarding standing is that Plaintiffs do not establish standing for claims regarding future and pending grant terminations because "Plaintiffs cannot identify future grant applications opportunities that do not yet exist" and because Plaintiffs cannot establish that pending grants will be denied. Opp. 19–20. Defendants' argument has no merit.

Plaintiffs' claims regarding future and pending grant terminations are not speculative and satisfy the well-established requirement that threatened injury be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). Plaintiffs have already had their research projects halted as a result of the terminated grants, which Defendants do not dispute establishes standing. *See Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019); *see also* Opp. 19–20. Each Plaintiff who had their research funding terminated received a boilerplate termination stating that the grant was being terminated because it either related to "transgender issues"[5] or was "DEI-related."[6] Seeking to enjoin Defendants from future and pending grant terminations or denials on the same unlawful basis is certainly not too speculative to warrant standing. Plaintiffs have indicated they have prepared or are waiting to submit future grant applications for research relating to LGBTQI+ health, for which the Directives prohibit funding.[7] A plaintiff "does not have to await the

---

[5] *See, e.g.*, Arayasirikul Decl. ¶¶ 16, 18, 20; Beccia Decl. ¶ 12; Garofalo Dec. ¶ 14; Holmes Decl. ¶ 13, & Exhibit B at 5; Littleton Decl. ¶ 12; Moe Decl. ¶¶ 10, 17; Murchison Decl. ¶ 12; Phillips Dec. ¶ 24; Poe Decl. ¶¶ 13, 15, & Exhibit A at 5; Roe Decl. ¶ 14; Soe Decl. ¶ 19, & Exhibit E at 5; Spinelli Decl. ¶ 12; Streed Decl. ¶ 15.

[6] *See, e.g.*, Birkett Decl. ¶ 11; Brewer Decl. ¶ 15; Garofalo Decl. ¶¶ 11, 17, 20, 23; Hassmiller Decl. ¶ 15; Noar Decl. ¶ 12; Peitzmeier Decl. ¶ 12; Phillips Decl. ¶ 17; Poe Decl. ¶ 20; Ribisl Decl. ¶ 14; Umberson Decl. ¶ 10.

[7] *See, e.g.*, Poe Decl. ¶ 23; Birkett Decl. ¶ 13; Ribisl Decl. ¶ 20.

consummation of threatened injury to obtain preventative relief." *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007) (cleaned up). Moreover, Defendants' contention completely ignores that Plaintiffs are presenting a "facial challenge" to the Agency Directives and Challenged Agency Actions, which are the basis for Plaintiffs' fear that future grants will likely be denied or terminated. *See PFLAG*, 769 F. Supp. 3d at 422–24.

Moreover, it would be futile and antithetical to the purpose of standing for Plaintiffs to be required to apply for future grants related to gender identity, LGBTQI+ health, or DEI, only to have their applications denied. Such a requirement is contrary to the Fourth Circuit's longstanding application of the "futile gesture" doctrine. *See Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1450-51 (4th Cir. 1990); *Fain v. Crouch*, 540 F. Supp. 3d 575, 583 (S.D.W. Va. 2021).

## III.   Defendants' Challenged Conduct Violates the Equal Protection Guarantee.

### A.   Defendants' discriminatory conduct injured Plaintiffs.

Defendants contend (Opp. 21) that Plaintiffs do not assert an equal protection claim because they were not discriminated against based on their *own* sex or gender identity. Opp. 21. Defendants are incorrect. The Fourth Circuit has long held that plaintiffs who are not themselves members of a protected class but who are injured by discrimination against protected classes with whom they associate may bring an equal protection claim in their own right.[8]

In *Scott v. Greenville County*, 716 F.2d 1409, 1414 (4th Cir. 1983), the Fourth Circuit considered an equal protection claim brought by a white real estate developer who was denied a

---

[8] Contrary to Defendants' confusing assertion (Opp. 21), Plaintiffs have pled an equal protection claim with respect to the termination or withholding of grants based on the research's purported connection to "DEI." The Plaintiffs' grants relating to the health of lesbian, gay, and bisexual individuals (as opposed to transgender individuals) were terminated based on their connection to "DEI," and not to "gender ideology." The Complaint alleges that eight Plaintiffs had grants terminated based on their relation to "DEI," Compl. 5-9; identifies five DEI-related directives in its definition of "Agency Directives," *id*. ¶¶ 84-91; defines "Challenged Agency Actions" to include "terminations, suspensions, or withholding of grants and/or related funding … because the research relates to" topics such as, *inter alia*, "diversity," "equity," "inclusion," "DEI," "LGBTQI+ health," and "sexual orientation," *id*. ¶ 99; and alleges that these Agency Directives and Challenged Agency Actions violated Plaintiffs' equal protection rights, *id*. ¶¶ 119-28.

permit to build a multi-family apartment complex because its residents would likely be members of racial minorities. The court explained that "if defendants singled out [the plaintiff] for disadvantageous treatment because of his willingness to house minority tenants, then [the plaintiff] in his own stead suffered injury to his right to be free from official discrimination." *Id.* at 1415; *see also Yesteryears, Inc. v. Waldorf Rest., Inc.*, 730 F. Supp. 1341, 1352–54 (D. Md. 1989) (white club owners could assert claims based on discrimination against Black clientele).

So too here. Plaintiffs have alleged that they were "singled out … for disadvantageous treatment"—*i.e.*, their grants were terminated, withheld, or not approved because their research aims to improve the health of LGBTQI+ individuals. Because Plaintiff have alleged that *they themselves* suffered harm, they have alleged an equal protection violation in their own right.

Defendants offer no contrary authority. Their reliance on *Wilcox v. Lyons*, 970 F.3d 452, 460 (4th Cir. 2020), which simply held that the equal protection clause does not encompass retaliation claims, is inapposite. Plaintiffs here do not raise a retaliation claim or otherwise claim that they were unlawfully punished because they "report[ed] alleged harassment and discrimination." Br. 21 (quoting *Wilcox*, 970 F.3d at 460). Rather, Plaintiffs' injuries stem from the Defendants' discriminatory conduct itself.

## B.    The Court should reject Defendants' call to ignore Fourth Circuit precedent.

Defendants' next argument—that the court should evaluate Plaintiffs' equal protection claims under a rational basis standard—fares no better. Remarkably, Defendants urge this Court to flout the Fourth Circuit's binding precedent in *Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024), and *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), and hold that transgender individuals are not a quasi-suspect class. Opp. 21–24; *see also id.* at n.8. But this Court cannot simply ignore binding circuit precedent. Absent *en banc* Fourth Circuit or Supreme Court case law saying otherwise, this Court must apply heightened scrutiny to discrimination based on

transgender status. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007).[9]

Notably, the Supreme Court's decision in *United States v. Skrmetti*, 605 U.S. __, 2025 WL 1698785 (June 18, 2025), changes nothing in this regard. The Court there *expressly declined* to reach the question of whether transgender status classifications warrant heightened scrutiny because, in its view, the Tennessee law at issue did "not classify on the basis of transgender status." *Id.* at *11. Heightened scrutiny thus remains the rule for anti-transgender discrimination in this Circuit. *See Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) (discussing the effect of new Supreme Court cases on existing precedent) (collecting cases). Unlike *Skrmetti*, here there is no question that Defendants' challenged conduct—terminating federal funding for research aimed at improving the health of transgender individuals—classifies based on transgender status.

### C.    Defendants' conduct fails even rational basis scrutiny.

Defendants spend the remainder of their equal protection discussion arguing that their actions satisfy rational basis scrutiny because they are "rationally related to NIH's directive of reprioritizing research grants to ensure that federal funds are being directed to research that is consistent with science and that benefits the population at large." Opp. 24. But even applying rational basis scrutiny, Defendants do not and cannot explain how the terminated grants are not "consistent with science" or do not "benefit[] the population at large." Indeed, such demeaning descriptions contradict the reviews that led NIH to fund the Plaintiffs' research in the first place— reviews that placed Plaintiffs' research among the top applicants with respect to scientific and technical merit.

---

[9] Defendants suggest that to plead an equal protection claim, Plaintiffs must allege that "the termination of their grants treated men and women differently." Opp. 21. But the Fourth Circuit and the Supreme Court have rejected this argument. *See Kadel*, 100 F.4th at 147 (collecting cases). The Supreme Court also rejected this argument in *Bostock v. Clayton County, Ga.*, 590 U.S. 644, 659 (2020), and the Fourth Circuit has applied *Bostock*'s reasoning in the equal protection context. *See Kadel*, 100 F.4th at 153-54. Indeed, the Supreme Court *specifically left open* this question just days ago. *See Skrmetti*, 2025 WL 1698785, at *12. The Fourth Circuit's precedent remains binding.

More importantly, Defendants fail entirely to grapple with the point that even under rational basis scrutiny, "a bare … desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Romer v. Evans*, 517 U.S. 620, 634–35 (1996) (quoting *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)). The Supreme Court recognized decades ago that "[a] law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.* at 633. That is precisely what Defendants have done here. They have not only terminated Plaintiffs' grants due to their connection with sexual and gender minority communities; they have declared that the government will not even *consider* grant applications—from Plaintiffs or anyone else—if the goal of the research is to improve the health and well-being of LGBTQI+ people. This is "a denial of equal protection … in the most literal sense." *Id.*

Finally, Defendants' revisionist argument that the government's purported objective is funding research that is "consistent with science and that benefits the population at large" (Opp. 24) falls flat. Even seemingly neutral government actions that are rooted in a discriminatory purpose violate equal protection, *see Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Skrmetti*, 2025 WL 1698785, at \*10. The Court is not required to blind itself to the offensive and demeaning language of the directives and terminations themselves, which claim that research based on gender identity "do[es] nothing to enhance the health of many Americans," "provide[s] low returns on investment," and "ignore[s] … biological realities." Br. 5–6. Nor can the Court ignore the current administration's broader anti-LGBTQI+ campaign of which the challenged actions are part and parcel. *See* Compl. ¶¶ 73–83; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977).

Defendants' challenged conduct purposefully disadvantages LGBTQI+ people by cutting

off all federal funding for research that aims to address their health and well-being. Such invidious discrimination flies in the face of our nation's equal protection principles.

## IV.    The Agency Directives and Defendants' Conduct Violate Section 1557 of the ACA.

Defendants do not dispute that NIH and HHS are covered entities nor that research constitutes a health program or activity under Section 1557 of the ACA. Any argument otherwise is waived. *See Oliver*, 208 F. Supp. 3d at 690. Defendants' sole argument is that Plaintiffs have purportedly "not shown that they were treated worse than other researchers on any ground prohibited by Section 1557." Opp. 26. This is risible. Plaintiffs' research funding has been terminated, and their future research is ineligible for funding, because it relates to "transgender issues," is "based on gender identity," is "DEI-related," or looks at health disparities affecting LGBTQI+ people. This is clear differential treatment based on sex, disability, and intersectional aspects of LGBTQI+ people's identities, all which Section 1557 prohibits. Br. 26–27. That Defendants cannot do. *See*, *e.g.*, *Nondiscrimination in Health Programs and Activities*, 89 Fed. Reg. 37522, 37594 (May 6, 2024). Though "[h]ealth research and clinical trial protocols" may "specify[] an individual's sex … where those characteristics are relevant to the clinical trial[,] … health research and protocols may result in discrimination," where they "disallow[] participation based on gender identity rather than on the basis of scientific requirement of the research." *Id.*

## V.    Defendants' Conduct Violates the Constitutional Separation of Powers.

Plaintiffs are also likely to prevail on their separation-of-powers claim. Defendants do not (and cannot) deny the Plaintiffs' clear showing (Br. 28-29) that Article I endows Congress, not the executive, with *exclusive* authority over federal spending, which necessarily includes the power to "*condition* how public funds are spent." Defendants' reliance (Opp. 27) on 42 U.S.C. § 241(a)(3), which gives NIH authority to "make" grants but not to create new conditions for them, does not displace this settled principle. Nor does § 282(b), which in no way "explicitly authorizes" NIH to

terminate grants by fiat as Defendants suggest (Opp. 26–27).

Defendants' suggestion that NIH enjoys unbridled "discretion to terminate grants" because those statutes do not expressly "constrain" or "cabin" its grant-*making* authority falls similarly flat. Opp. 27. "It is no exaggeration to say that 'an agency literally has no power to act … unless and until Congress confers power upon it." *PFLAG*, 769 F. Supp. 3d at 434 (citations omitted). Statutory silence, particularly when paired with other express grants of authority, will not suffice. *See Zuber v. Allen*, 396 U.S. 168, 185 (1969); *United States v. Roof*, 10 F.4th 314, 390 (4th Cir. 2021). NIH's decision to terminate or withhold funding for research related to gender identity or DEI "without specific authorization by Congress" to do so—and, indeed, despite express congressional directives to the contrary, *see* Br. 29 (collecting statutes)—violates the separation of powers. *PFLAG*, 769 F. Supp. 3d at 434–35; *see also SFAF*, 2025 WL 1621636, at *25, *27.

## VI.    Defendants' Conduct Violates the APA.

Another federal court in a parallel case challenging the same conduct has already rejected Defendants' arguments against Plaintiffs' APA claims. *See Massachusetts v. Kennedy*, No. 1:25-cv-10814-WGY (D. Mass. June 16, 2025) (ECF Nos. 143, 151). This Court should do the same.

### A.    The Directives and Challenged Agency Actions Are "Final Agency Actions."

The Agency Directives and the resulting terminations are final agency action. Defendants do not deny that "the terminations themselves are final agency action." *Kennedy*, 2025 WL 1371785, at *10. Nonetheless, they try to recast the Directives as merely "[i]nvestigatory" or "interlocutory." Opp. 28. Case law and Defendants' conduct show otherwise. As an initial matter, the mere fact that the *implementation* of the Directives involved subsequent agency actions has no bearing on whether the Directives themselves are final agency actions. *See, e.g.*, *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 45 (D.D.C. 2011) (holding guidance "being applied in a binding manner" qualified as "final agency action" despite "the representation that it [wa]s an

interim document"); *Am. Fed'n of Tchrs. v. Dep't of Educ.*, 2025 WL 1191844, at *13 (D. Md. Apr. 24, 2025) (application of directives "as if [they are] binding" constitutes final agency action).

Defendants admit that the challenged Directives mandated a "review" of whether grant awards were "inconsistent with NIH's mission." In doing so (Br. 4), the Directives changed NIH policy by declaring existing grants "inconsistent with the Department's policy," directing personnel to "pause all payments," and instructing that grants deemed inconsistent with the new policy "may be terminated." *Id.* Other Agency Directives put more teeth on NIH's new policy by directing personnel to "completely excise" funding related to "DEI" and "gender issues," and by providing boilerplate language to be used in grant termination notices. Br. 4–5. Such policy changes, which are "akin to a binding agency opinion," fall squarely within APA's definition of "final agency action." *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA*, 2025 WL 1206246, at *45, *51 (D. Md. Apr. 17, 2025) ("*AFSCME*"), *appeal filed*, No. 25-1411 (4th Cir.).

The "practical effect" of Defendants' issuance of the Agency Directives was not, as Defendants suggest (Opp. 28), merely to initiate some "prefatory" review of the programs receiving NIH funding. *Chamblee v. Espy*, 100 F.3d 15, 17–18 (4th Cir. 1996). Indeed, as another court considering the same Directives recently held, Defendants' "own [alleged] conduct confirms that the directives are not 'interlocutory': if they were, defendants would not be implementing them by terminating hundreds of grants around the country." *Kennedy*, 2025 WL 1371785, at *10. On the contrary, the Directives "bear the hallmarks of finality" because "they present the authoritative position" of HHS and NIH on funding research related to DEI and gender identity, *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 501 (D. Md. 2019) (cleaned up), and because they "alter a legal regime" that had previously "never been interpreted to

preclude" NIH from awarding such grants. *Id.*; *Am. Fed'n of Tchrs.*, 2025 WL 1191844, at *13; *cf., e.g.*, 42 U.S.C. § 283p.

**B.      Defendants' Conduct Was Not "Committed to Agency Discretion."**

Defendants claim immunity from APA review because their actions were "committed to agency discretion." Opp. 29–30 (citing 5 U.S.C. § 701(a)(2)). They are wrong. To start, the agency-discretion exception "must be read 'quite narrowly'" and "is confined to 'those rare circumstances where the relevant statute is drawn' in such a manner that the 'court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *People for Ethical Treatment of Animals, Inc. v. Tabak*, 662 F. Supp. 3d 581, 592 (D. Md. 2023) (citations omitted).

Citing nothing, Defendants proclaim that "grant terminations are unreviewable because they are committed to agency discretion by law." Opp. 5. That is not the law. Grant funding decisions are reviewable under the APA, as multiple federal courts have held.[10] But more fundamentally, the government ignores that Plaintiffs' APA claims also challenge Defendants' adoption of the Agency Directives, apparently conceding that the Directives were not committed to agency discretion. *See Kennedy*, 2025 WL 1371785, at *11 (stressing this distinction). Defendants argue that because statutes give them some discretion to "allocat[e] funds from a lump-sum appropriation," NIH's grant-termination authority is committed to agency discretion and the inquiry ends there. Opp. 30, 31. But the agency-discretion exception "does not apply merely because 'a statute grants broad discretion to an agency[.]'" *Pol'y & Rsch., LLC v. DHHS*, 313 F. Supp. 3d 62, 73 (D.D.C. 2018). Congress and "agencies themselves frequently cabin their own

---

[10] *Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, 025 WL 863319, at *6 (D. Md. Mar. 19, 2025); *Climate United Fund v. Citibank, N.A.*, 2025 WL 1131412, at *14 (D.D.C. Apr. 16, 2025); *Ass'n of Am. Univs. v. Dep't of Energy*, 2025 WL 1414135, at *10 n.2 (D. Mass. May 15, 2025); *Sustainability Inst. v. Trump*, 2025 WL 1486978, at *7 (D.S.C. Apr. 29, 2025), *appeal filed*, No. 25-1575 (4th Cir.); *Martin Luther King, Jr. Cnty. v. Turner*, 2025 WL 1582368, at *13 (W.D. Wash. June 3, 2025), *appeal filed*, No. 25-3664 (9th Cir.).

discretionary funding determinations" through "formal regulations or other binding policies that provide meaningful standards for a court to employ" when reviewing grant-termination decisions. *Id.* at 76. Both apply here, as Congress and the agencies set restrictions on Defendants in the grant-termination context (Br. 2), which Defendants disregarded (Br. 33–35). *See Pol'y & Rsch.*, 313 F. Supp. 3d at 76 (rejecting agency-discretion argument because "HHS's regulations expressly address—and limit—the agency's discretion to 'terminate' monetary awards"). The court can "review where the Challenged Directives conflict with authorizing statutes and applicable regulations." *Kennedy*, 2025 WL 1371785, at *11 (cleaned up). The agency-discretion exception does not apply.

In any event, Defendants' "discretion may not be exercised on a discriminatory basis." *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 130 (5th Cir. 1986). Agencies have discretion over whom they hire, for example, but they cannot discriminate based on race. And NIH has some discretion about grant recipients, but it cannot, for example, refuse to fund female researchers on the ground that they are women. The same principle applies here. NIH cannot refuse to fund research simply because it aims to improve the health of LGBTQI+ people.

### C.    Defendants' Actions Were Not "The Result of Reasoned Decision-Making."

Defendants use various labels to describe the supposed "reasoned decision-making" that preceded their boilerplate grant terminations. *E.g.*, Opp. 29 (calling it "a searching review mindful of NIH priorities"), 33 (a "systematic review"). But undisputed facts belie these labels. Defendants freely admit the only "relevant data" they considered before sending boilerplate termination letters to Plaintiffs were "the grant awards and the agency's priorities"—and nothing else. Opp. 32–33. Defendants do not explain how the agencies arrived at those new "priorities," much less the scientific basis on which they determined that inquiry into LGBTQI+ health issues "lacked scientific merit." Defendants also do not explain the criteria they used to determine if or why

Plaintiffs' grants fit into these newly-prohibited categories of "DEI" and "gender issues." Nor do they explain how, when, or whether they considered reliance interests, including the impact on lifesaving healthcare or diverse researcher plaintiffs' career progression funded by terminated grants. Answers to those questions are the "relevant data" that must be assessed in an APA inquiry. *See, e.g.*, *Massachusetts v. NIH*, 770 F. Supp. 3d 277, 306–07 (D. Mass. 2025), *appeal filed*, No. 25-1344 (1st Cir.); *Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, 770 F. Supp. 3d 822, 856–57 (D. Md. 2025). Defendants' failure to engage with any such questions—before the grants were terminated, as required, or even now via their post-hoc rationalizations—is the *raison d'être* of Plaintiffs' claims. Defendants chose not to because doing so would reveal that the process that led to these "priorities" was not based on data, but rather on animus.

> **D.    Defendants' Actions Violate Their Own Regulations.**

Defendants' arguments that their actions do not violate HHS regulations hold no water.

First, Defendants claim their "regulations nowhere bars [sic] NIH from including a change in agency priorities from inclusion in its contracts or from unilaterally exercising discretionary control." Opp. 33. That is both irrelevant and untrue. It is irrelevant because this case has nothing to do with conditions in any contract; it is HHS regulations, not any terms of any contract, that decide the outcome here. *See Pol'y & Rsch.*, 313 F. Supp. 3d at 82 (holding that regardless of what Grants Policy Statement "might be read to authorize, its authority does not, and cannot, trump the agency's formal regulations"). It is untrue because regulations do restrict Defendants' "discretionary control." *See* 2 C.F.R. § 200.340 (permitting priority change only "to the extent authorized by law"); *Am. Ass'n of Colls.*, 770 F. Supp. 3d at 856.

Second, although Defendants concede that 45 C.F.R. § 75.372(a) governs the "grounds upon which a grant may be terminated," they claim that "the use of the word 'may' implies that

the list is not exhaustive or exclusive." Opp. 33–34. That tortured reading ignores the much more natural reading of the word "may": that NIH *may*—but does not have to—terminate for noncompliance, consistent with the immediately-preceding C.F.R. section. *See* 45 C.F.R. § 371. Moreover, courts have already resolved this question, holding 45 C.F.R. § 75.372(a) provides the "only" bases on which HHS can terminate. *See Healthy Teen Network v. Azar*, 322 F. Supp. 3d 647, 651 (D. Md. 2018); *Pol'y & Rsch.*, 313 F. Supp. 3d at 76.

Third, Defendants label "untrue" a strawman argument in which they suggest Plaintiffs claim NIH failed to develop a Strategic Plan in 2021. Opp. 34. That is obviously wrong. Plaintiffs said NIH *did* develop a Strategic Plan in 2021, but Plaintiffs take issue with NIH claiming "changed priorities" without following the congressionally mandated course to do so: modifying that 2021 Strategic Plan. Br. 34. Then, citing nothing, Defendants disclaim any obligation to follow their Strategic Plans (Opp. 34), ignoring statutory obligations to do so. *See* 42 U.S.C. § 282(b)(6).

### E.    Plaintiffs Need Not Await the Outcome of Futile "Appeals."

Defendants stress that the termination notices referenced an appeal process and, "[u]ntil those appeals are decided[,] any claim of futility is premature." Opp. 13–14. But Plaintiffs (who are not the awardees) need not exhaust administrative remedies when the agency shows a "hard and fast" stance that "makes an adverse ruling a certainty[.]" *Thetford Props. IV Ltd. P'ship v. HUD*, 907 F.2d 445, 450 (4th Cir. 1990); *see also Houghton v. Shafer*, 392 U.S. 639, 640 (1968). If there ever was a clear case of "futility," it is this one. *E.g.*, Soe Suppl. Decl. ¶ 5.

Although NIH typically suspends noncompliant grants before termination to allow recipients to take corrective action (*e.g.*, ECF No. 64-5 at 19), Defendants opted for immediate terminations and issued accompanying notices stating that "no corrective action is possible here" because "[t]he premise of this award is incompatible with agency priorities, and no modification of the project could align the project with agency priorities." *Id.* Though the termination notices

claim an appellate process still exists, that process is "clearly useless" since NIH has already "predetermined the issue" that would be before it in any appeal. *Morris v. State of Md.*, 908 F.2d 967, at *5 (4th Cir. 1990) (unpublished); *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992).

## VII.    Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction.

Defendants' assertion that Plaintiffs have not demonstrated irreparable harm holds no water, as Defendants' deprivation of Plaintiffs' constitutional rights (*see supra* Sections III, V) "unquestionably constitutes irreparable injury." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022). Defendants claim, without support, that "funding may be secured from alternative sources." Setting aside that this argument is at odds with the uncontradicted facts, *see, e.g.*, Beccia Decl. ¶ 19 ("Alternative funding streams for this specific area of research are scarce, especially in the current environment."); Peitzmeier Decl. ¶ 22 ("I have not been successful in identifying alternate funders for these proposals"); https://www.nih.gov/grants-funding (NIH is the "largest public funder of biomedical research in the world."), the injuries that Plaintiffs and their LGBTQI+ patients have already sustained cannot simply be remedied through alternative funding. Plaintiffs' injuries concern extensive harm to the trajectories of their careers at all stages and profound mental and emotional distress, not to mention harms to their patients, research participants, staff, colleagues and the work itself—as already described at length. Br. 37–39.

Moreover, Defendants' actions endanger the health of LGBTQI+ people, including Plaintiffs' patients and research participants. Losing health resources, including pivotal research, constitutes irreparable harm. Br. 38-39; *see also SFAF*, 2025 WL 1621636, at *28; *PFLAG*, 769 F. Supp. 3d at 449; *Washington v. Trump*, 768 F. Supp. 3d 1239, 1279 (W.D. Wash. 2025).

## VIII.    The Balance of the Equities and Public Interest Favor Plaintiffs.

The balance of equities and the public interest support injunctive relief. Defendants largely rehash arguments rejected by other courts. First, Defendants' inability to pursue their priorities

does not constitute irreparable harm. *See Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020). Second, courts have consistently held—including in the context of NIH funding—that the public interest favors an injunction where harm to health and safety would result. *E.g.*, *Massachusetts*, 770 F. Supp. 3d at 326. Third, spending appropriated funds *as directed by Congress* does not constitute an irreparable injury. *See Cmty. Legal Servs. in E. Palo Alto v. HHS*, 137 F.4th 932, 943 (9th Cir. 2025). Fourth, "Defendants do not have a legitimate interest in ensuring that funds are spent pursuant to conditions that were likely imposed in violation of the APA and/or the Constitution." *Turner*, 2025 WL 1582368, at *20. Indeed, "there is generally no public interest in the perpetuation of unlawful agency action." *AFSCME*, 2025 WL 1206246, at *54.

## IX.    The Court Should Waive Bond or Impose a Nominal Bond.

The Court should either waive the bond requirement or impose a nominal bond. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). The government does not elaborate on what money an injunction would force it to spend. *See Washington*, 768 F. Supp. 3d at 1282; *see also Citizens for Responsible Curriculum v. Montgomery Cnty. Pub. Schs.*, 2005 WL 1075634, at *12 (D. Md. May 5, 2005). But a preliminary injunction does not pose any realistic likelihood of harm on Defendants, given Plaintiffs' likelihood of success. *See PFLAG*, 769 F. Supp. 3d at 454. Furthermore, a bond would effectively deny Plaintiffs the judicial review to which they are entitled. *See SFAF*, 2025 WL 1621636, at *29. Finally, courts routinely waive the bond requirement when issuing injunctive relief to protect a party's constitutional rights. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 291 (D. Md. 2025) (collecting cases). There should be no price tag or bond attached to defending these fundamental constitutional guarantees.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

Dated: June 23, 2025

Respectfully submitted,

*/s/ Elizabeth P. Hecker*

Justin D. Kingsolver*
**Bryan Cave Leighton Paisner LLP**
1155 F St. NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
justin.kingsolver@bclplaw.com

Elizabeth P. Hecker*
Anuj Vohra*
Ruben F. Reyna (D. Md. Bar 14949)
Heather Sanborn*
Tai Williams*
**Crowell & Moring LLP**
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
ehecker@crowell.com
avohra@crowell.com
rreyna@crowell.com
hsanborn@crowell.com
taiwilliams@crowell.com

Alexis Ward*
**Crowell & Moring LLP**
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
award@crowell.com

Michael Vine*
**Crowell & Moring LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
mvine@crowell.com

Alexander Rosen*

Omar Gonzalez-Pagan**
**Lambda Legal Defense
  and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: (212) 809-8585
Facsimile:  (855) 535-2236
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy*
**Lambda Legal Defense
  and Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006
Telephone: (202) 804-6245
Facsimile:  (855) 535-2236
kloewy@lambdalegal.org

Nathan Maxwell*
**Lambda Legal Defense
  and Education Fund, Inc.**
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Telephone: (312) 663-4413
Facsimile:  (855) 535-2236
nmaxwell@lambdalegal.org

Pelecanos*†
**Lambda Legal Defense
  and Education Fund, Inc.**
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: (213) 351-6051
Facsimile:  (855) 535-2236
pelecanos@lambdalegal.org

K. Lee Marshall*
Carlie Tenenbaum*
**Bryan Cave Leighton Paisner LLP**
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111

Jacob Zucker*
**Crowell & Moring LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
arosen@crowell.com
jzucker@crowell.com

\* Admitted *pro hac vice*.

\*\* Application for admission to D. Md. Bar approved; swearing in pending.

† Mailing Address Only

Telephone: (415) 675-3400
Facsimile: (415) 675-3434
lee.marshall@bclplaw.com
carlie.tenenbaum@bclplaw.com

Matthew Stanford*
**Bryan Cave Leighton Paisner LLP**
Two North Central Avenue, Suite 2100
Phoenix, AZ 85004-4406
Telephone: (602) 364-7068
Facsimile: (602) 364-7070
matt.stanford@bclplaw.com

## **CERTIFICATE OF SERVICE**

I certify that on this 23rd day of June, 2025, I filed the foregoing reply in support of motion for preliminary injunction, and supplemental declarations in support of motion for preliminary injunction, electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing on the following counsel of record:

Michael Jackman Wilson
Tarra DeShields
Assistant United States Attorney
U.S. Attorney's Office
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, MD  21201
Michael.Wilson4@usdoj.gov
Tarra.Deshields@usdoj.gov

*Counsel for Defendants*

_____/s/_____

Elizabeth P. Hecker