**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division: Montgomery County)**

AMERICAN ASSOCIATION OF
PHYSICIANS FOR HUMAN RIGHTS, INC.
d/b/a GLMA: HEALTH PROFESSIONALS
ADVANCING LGBTQ+ EQUALITY *et al.*,

         *Plaintiffs*,

      v.

NATIONAL INSTITUTES OF HEALTH
*et al.*,

         *Defendants.*

Civil Action No. 8:25-cv-01620-LKG

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION & STAY PENDING JUDICIAL
REVIEW PURSUANT TO 5 U.S.C. § 705**

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

I.    All Plaintiffs have standing to bring equal protection claims............................1

    A.    Researcher Plaintiffs have constitutional and prudential standing in
         their own right.............................................................................................1

    B.    GLMA has associational standing. ............................................................7

    C.    The Healthcare Provider Plaintiffs have third-party standing. ...................7

II.   Binding Fourth Circuit precedent requires application of heightened
    scrutiny to Plaintiffs' equal protection claims. ................................................10

III.  All Plaintiffs have standing to bring claims under Section 1557 of the
    ACA. ................................................................................................................12

IV.   Plaintiffs are entitled to injunctive relief barring implementation of the
    Agency Directives and Challenged Agency Actions against them,
    including reinstatement of terminated grants, under their equal protection
    and Section 1557 claims. .................................................................................14

    A.    Equal Protection.......................................................................................14

    B.    Section 1557.............................................................................................15

    C.    Scope of Relief.........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984)...................................................................................7

*Am. Bar Ass'n v. U.S. Dep't of Justice*,
    2025 WL 1388891 (D.D.C. May 14, 2025)...........................................14

*Am. Coll. of Obstetricians and Gynecologists v. FDA*,
    472 F. Supp. 3d 183 (D. Md. 2020)........................................................4

*Arroyo González v. Rosselló Nevares*,
    305 F.Supp.3d 327 (D.P.R. Apr. 20, 2018) ............................................9

*Barrett v. W. Chester Univ. of Pa. of State Sys. of Higher Educ.*,
    2003 WL 22803477 (E.D. Pa. Nov. 12, 2003) .....................................15

*Belmora LLC v. Bayer Consumer Care AG*,
    819 F.3d 697 (4th Cir. 2016) ................................................................12

*Brandt v. Rutledge*,
    551 F. Supp. 3d 882 (E.D. Ark. 2021), *aff'd*, 47 F.4th 661 (8th Cir. 2022) ............................4

*Buchanan v. Warley*,
    245 U.S. 60 (1917).............................................................................1, 2

*C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*,
    2023 WL 8777349 (W.D. Wash. Dec. 19, 2023) .................................15

*Caplin & Drysdale, Chartered v. United States*,
    491 U.S. 617 (1989)..........................................................................7-8

*City & Cnty. of San Francisco v. Azar*,
    411 F. Supp. 3d 1001 (N.D. Cal. 2019) ................................................8

*City of Greensboro v. Guilford Cnty. Bd. of Elections*,
    120 F. Supp. 3d 479 (M.D.N.C. 2015) ................................................14

*Climate United Fund v. Citibank, N.A.*,
    2025 WL 1131412 (D.D.C. Apr. 16, 2025)..........................................14

*Craig v. Boren*,
    429 U.S. 190 (1976)...............................................................................8

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   596 U.S. 212 (2022)..............................................................................13, 15

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019)..........................................................................................4

*Etheridge v. Norfolk W. Ry. Co.*,
   9 F.3d 1087 (4th Cir. 1993) ...........................................................................10

*Folwell v. Kadel*,
   2025 WL 1787687 (U.S. Jun. 30, 2025) .........................................................11

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
   503 U.S. 60 (1992)..........................................................................................15

*Fraternal Ord. of Police v. United States*,
   152 F.3d 998 (D.C. Cir. 1998) .......................................................................10

*Friends of the Earth, Inc., v. Gaston Copper Recycling Corp.*,
   204 F.3d 149 (4th Cir. 2000) ...........................................................................6

*Gilliam v. Dep't of Pub. Safety & Corr. Servs.*,
   2024 WL 5186706 (D. Md. Dec. 20, 2024).....................................................10

*Gloucester Cty. Sch. Bd. v. Grimm*,
   141 S. Ct. 2878 (2021)....................................................................................10

*Griffin v. Dep't of Lab. Fed. Credit Union*,
   912 F.3d 649 (4th Cir. 2019) .......................................................................4, 6

*Grimm v. Gloucester Cty Sch. Bd.*,
   972 F.3d 586 (4th Cir. 2020) ...........................................................10, 11, 12, 14

*Harris Cnty. v. Kennedy*,
   2025 WL 1707665 (D.D.C. June 17, 2025).....................................................14

*HIAS, Inc. v. Trump*,
   985 F.3d 309 (4th Cir. 2021) .........................................................................14

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*,
   477 U.S. 274 (1986)........................................................................................15

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005)........................................................................................13

*Kadel v. Folwell*,
   100 F. 4th 122 (4th Cir. 2024) ...................................................................11, 12

*Kadel v. Folwell*,
    446 F. Supp. 3d 1 (M.D.N.C. 2020) ..................................................5, 12, 13

*Kenny v. Wilson*,
    885 F.3d 280 (4th Cir. 2018) ...................................................................1

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004)...............................................................................7, 8

*Krakauer v. Dish Network, L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) ................................................................12

*Labrador v. Poe ex rel. Poe*,
    144 S. Ct. 921 (2024)............................................................................15

*Lexmark Int'l., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..............................................................................12

*Li v. Holder*,
    666 F.3d 147 (4th Cir. 2011) ................................................................11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................6

*M.A.B. v. Bd. of Educ. of Talbot Cty.*,
    286 F. Supp. 3d 704 (D. Md. 2018)......................................................10

*Maryland v. Wilson*,
    519 U.S. 408 (1997)..............................................................................11

*Md. Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) .............................................................7, 8, 9

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993)................................................................................4

*Ohio Ass'n of Indep. Sch. v. Goff*,
    92 F.3d 419 (6th Cir. 1996) ..................................................................10

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002)..................................................................10

*PFLAG v. Trump*,
    766 F. Supp. 3d 535 (D. Md. 2025)......................................................10

*PFLAG v. Trump*,
    769 F. Supp. 3d 405 (D. Md. 2025)......................................................14

*Powers v. Ohio*,
    499 U.S. 400 (1991)............................................................................................7, 8, 9

*Rhode Island v. Trump*,
    2025 WL 1303868 (D.R.I. May 6, 2025) ...............................................................14

*RK Ventures, Inc., v. City of Seattle*,
    307 F.3d 1045 (9th Cir. 2002) ...........................................................................3, 5

*Roberts v. Colo. State Bd. of Agric.*,
    998 F.2d 824 (10th Cir. 1993) ..............................................................................15

*S.F. A.I.D.S. Found. v. Trump*,
    2025 WL 1621636 (N.D. Cal. June 9, 2025)..............................................5, 8, 9, 14

*Scott v. Greenville Cty.*,
    716 F.2d 1409 (4th Cir. 1983) ........................................................................2, 3, 5, 6

*Short v. Hartman*,
    87 F.4th 593 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024)........................11

*Singleton v. Wulff*,
    428 U.S. 106 (1976).................................................................................................7

*Stone v. Trump*,
    400 F. Supp. 3d 317 (D. Md. 2019)......................................................................10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023).................................................................................................7

*T.S. by & through T.M.S. v. Heart of CarDon, LLC*,
    43 F.4th 737 (7th Cir. 2022) .......................................................................... 12-13

*Taylor v. Grubbs*,
    930 F.3d 611 (4th Cir. 2019) ................................................................................12

*Texas v. United States*,
    798 F.3d 1108 (D.C. Cir. 2015)............................................................................11

*Thakur v. Trump*,
    2025 WL 1734471 (N.D. Cal. June 23, 2025) ......................................................14

*Tovar v. Essentia Health*,
    342 F. Supp. 3d 947 (D. Minn. 2018)...................................................................13

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).................................................................................................4

*Tyler v. Cain*,
    533 U.S. 656 (2001)...........................................................................................11

*United States v. Skrmetti*,
    145 S. Ct. 1816 (2025)..............................................................................11, 12

*United States v. Texas*,
    599 U.S. 670 (2023)...............................................................................................1

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)......................................................................................1, 2, 5

*Warth v. Seldin*,
    422 U.S. 490 (1975)..............................................................................1, 7, 8, 15

*Washington v. Trump*,
    768 F. Supp. 3d 1239 (W.D. Wash. 2025)..................................................8, 9, 14

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    485 F. Supp. 3d 1 (D.D.C. 2020) .................................................................8, 9

*Widakuswara v. Lake*,
    2025 WL 1166400 (D.D.C. Apr. 22, 2025) ......................................................14

*Young Apartments, Inc. v. Town of Jupiter*,
    529 F.3d 1027 (11th Cir. 2008) ............................................................3, 4, 5, 6

**Statutes**

20 U.S.C. § 1681(a) ..............................................................................................13

42 U.S.C. § 2000d ..................................................................................................13

42 U.S.C. § 6101 ....................................................................................................13

42 U.S.C. § 18116(a) ......................................................................................12, 13

**Regulations**

45 C.F.R. § 92.6 ....................................................................................................15

In its July 3, 2025 Order (Doc. 83), the Court directed the parties to provide supplemental briefing on several issues. Plaintiffs hereby respond to the Court's questions as follows:

## ARGUMENT

### I.    All Plaintiffs have standing to bring equal protection claims.

Article III standing requires a plaintiff to "show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023). The "essence" of constitutional standing is to ensure that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-61 (1977) (citation modified).

Standing analysis also weighs "prudential" concerns, including "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Although each Plaintiff here has standing to assert equal protection claims, this Court need only find that "*one* plaintiff" has "demonstrate[d] standing for each claim and form of requested relief." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citations omitted) (emphasis added).

### A.    Researcher Plaintiffs have constitutional and prudential standing in their own right.

Over a century ago, the Supreme Court held that a plaintiff asserting an equal protection claim need not be a member of the protected class being discriminated against to have constitutional and prudential standing to sue *in their own right* if that plaintiff's injury is nevertheless attributable to that discrimination. In that instance, a white plaintiff had standing to challenge a city ordinance that barred him from selling his home to a Black man. *See Buchanan v. Warley*, 245 U.S. 60, 73 (1917). The discriminatory ordinance's obstruction of "the plaintiff's right

to have his contract enforced" meant that his rights were "directly and necessarily involved." *Id.*

The Court has reaffirmed this principle many times since. For example, in *Arlington Heights*, a nonprofit housing developer challenged a city's denial of a zoning permit needed to perform a contract to build racially integrated housing as violating the Equal Protection Clause. 429 U.S. at 257–58. The Supreme Court had "little doubt" about the developer's constitutional standing. *Id.* at 261. Because the permit denial had created "an absolute barrier" to performance that "will be removed" by the injunctive relief it sought, the developer had shown "an injury to itself" that was "likely to be redressed by a favorable decision." *Id.* at 262 (citation modified).

*Arlington Heights* also recognized that "economic injury is not the only kind of injury that can support a plaintiff's standing." *Id.* at 262–63. The developer's interest in building the property "stem[med] . . . from an interest in making suitable low-income housing available in areas where such housing is scarce," which the Court held was "not mere abstract concern about a general problem of interest," but provided "that essential dimension of specificity that informs judicial decisionmaking." *Id.* at 263 (citation modified). The developer thus "ha[d] standing to assert *its own rights*." *Id.* (emphasis added).

The Fourth Circuit applied these principles to a nearly identical situation in *Scott v. Greenville County*, 716 F.2d 1409, 1413 (4th Cir. 1983). The district court had held the developer lacked standing to challenge the county's racially motivated denial of a building permit on equal protection grounds because he was "not a member of any racial minority." *Id.* at 1414. The Fourth Circuit reversed: constitutional standing was established because the plaintiff "fairly alleges that denial of the [building] permit was due to the intervention of the defendants." *Id.* As for prudential standing, the Fourth Circuit held that, regardless of whether the developer himself was a member of a minority group, "if defendants singled out [the developer] for disadvantageous treatment

because of his willingness to house minority tenants, then [he] *in his own stead* suffered injury to his right to be free from official discrimination." *Id.* (emphasis added).

This is the law in other circuits as well. In *RK Ventures, Inc., v. City of Seattle*, 307 F.3d 1045, 1050 (9th Cir. 2002), the Ninth Circuit affirmed nightclub owners' standing to bring an equal protection claim challenging the city's efforts to stop establishments from playing music that appealed to African Americans, forcing the club to be sold at a loss to a nearby club that catered to white clientele. The court found "no bar to standing under the Equal Protection Clause where an individual alleges a personal injury stemming from his or her association with members of a protected class." *Id.* at 1055. Because the owners "were the direct targets of the City's alleged racial discrimination due to their association with their African-American patrons," they had standing "to assert *their own equal protection claims*." *Id.* at 1056 (emphasis added).

Similarly, in *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1037, 1038 (11th Cir. 2008), the Eleventh Circuit held that a non-Hispanic landlord had standing to challenge a city's discriminatory enforcement of its overcrowding ordinance against properties housing Hispanic immigrants. The landlord had constitutional standing because it had "suffered a financial injury" that was "caused by [the city]'s enactment … and enforcement" of the ordinance and would be remedied by the relief sought. *Id.* at 1038-39. As for prudential standing, the landlord's equal protection claims sought "to remedy its *own* mistreatment" that had "resulted from [the city's] discriminatory targeting of its Hispanic tenants" and, thus, aimed "to vindicate its own rights, which are distinct from the rights of its Hispanic tenants." *Id.* at 1039. The *Young* court pointed out that courts "routinely" recognize a business's standing to challenge state action that "harm[s] its business by discriminating against its customers." *Id.* "This rule of law is based on the uncontroversial principle that it is unconstitutional for a state actor, motivated by discriminatory

3

animus, to interfere with an individual's right to contract or associate with members of a protected class." *Id.* (collecting cases).[1]

This extensive precedent leaves no doubt that the researcher Plaintiffs here have standing to challenge Defendants' equal protection violations.

*First*, Plaintiffs have Article III standing because, as alleged in the Complaint and Plaintiffs' Declarations, the Agency Directives prevent their research from being eligible for federal funding because of its relation to the Banned Topics and the resulting terminations of the funding for their research projects have caused them professional, academic, financial, and reputational harm. *See, e.g.*, Complaint ("Compl.") ¶¶ 9, 24-29. It is well-established that "the imposition of [a] barrier" to compete for government funding, "not the ultimate inability to obtain" such funding, is an "injury in fact" in itself. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). As is professional and reputational harm, which Plaintiffs have alleged in spades.[2] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And as are dignitary harms or stigmatic injuries like those experienced by Plaintiffs. *See Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019).[3] To ultimately "lose out on federal funds" is a separate and distinct injury that likewise is "sufficiently concrete and imminent … to satisfy Article III." *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019); *see also*

---

[1] The researcher plaintiffs also have direct standing to bring their equal protection claims on the ground that they were treated differently from researchers who study topics that do not touch upon LGBTQI+ health. *See Am. Coll. of Obstetricians and Gynecologists v. FDA*, 472 F. Supp. 3d 183, 205-06 (D. Md. 2020) (abortion-care physicians had "direct" standing to assert an equal protection claim challenging government requirements prohibiting remote subscribing of mifepristone because "as prescribing physicians they are subjected to differential treatment as compared to other physicians who prescribe other drugs subject to more favorable rules"); *see also Brandt v. Rutledge*, 551 F. Supp. 3d 882, 888 (E.D. Ark. 2021), *aff'd*, 47 F.4th 661 (8th Cir. 2022).

[2] Many Plaintiffs described the significant harm to their careers resulting from Defendants' actions, including, in some cases, significant cuts to their salaries. *See, e.g.*, Doc. 64-5 (Streed) ¶ 24; Doc. 64-6 (Umberson) ¶ 14; Doc. 64-7 (Murchison) ¶ 16; Doc. 64-8 (Hassmiller) ¶¶ 18-21; Doc. 64-9 (Ribisl) ¶¶ 17-19; Doc. 64-10 (Holmes) ¶¶ 21-22; Doc. 64-11 (Spinelli) ¶ 17; Doc. 64-12 (Birkett) ¶ 19; Doc. 64-13 (Moe) ¶ 24; Doc. 64-14 (Brewer) ¶¶ 19-20; Doc. 64-15 (Garofalo) ¶ 31; Doc. 64-16 (Arayasirikul) ¶ 27; Doc. 64-17 (Noar) ¶¶ 18-20; Doc. 64-19 (Poe) ¶¶ 17-18; Doc. 64-21 (Peitzmeier) ¶¶ 14, 18, 22; Doc. 64-22 (Soe) ¶¶ 27-30; Doc. 64-23 (Phillips) ¶¶ 26-27.

[3] *See, e.g.*, Doc. 64-3 (Sheldon) ¶ 18; Doc. 64-16 (Arayasirikul) ¶ 27; Doc. 64-22 (Soe) ¶ 10.

*S.F. A.I.D.S. Found. v. Trump* ("*SFAF*"), 2025 WL 1621636, at *12 (N.D. Cal. June 9, 2025); PI Opening Br. 7.[4] And finally, Defendants' frustration of Plaintiffs' ability to engage in the beneficial research to which they have dedicated their professional lives constitutes much more than "mere abstract concern about a problem of general interest."[5] *See Arlington Heights*, 429 U.S. at 262–63.

Moreover, Plaintiffs have sufficiently alleged that their injuries were caused by Defendants' issuance of the Agency Directives and Challenged Agency Actions. *See* Compl. ¶¶ 100-118. And "it is clear that a favorable decision by this Court has the potential to redress Plaintiffs' injuries." *Kadel v. Folwell*, 446 F. Supp. 3d 1, 11 (M.D.N.C. 2020). An order enjoining Defendants from implementing the Agency Directives and from denying NIH funding for research related to LGBTQI+ health would redress Plaintiffs' injuries. *See also infra* Section IV.

*Second*, the researcher Plaintiffs have prudential standing because they were "the direct target of the discrimination," due to "[their] association with" LGBTQI+ individuals. *RK Ventures*, 307 F.3d at 1055. Though Plaintiffs themselves are not all members of the protected classes at issue, they remain the *targets* of the government's challenged action. *See Arlington Heights*, 429 U.S. at 253 (refusal to grant *developer's* request for rezoning); *Scott*, 716 F.2d at 1414 (*developer* denied permit to build low-income housing); *RK Ventures*, 307 F.3d at 1050, 1055 (ordinance prohibited *nightclub* from playing music that attracted African Americans); *Young Apartments*, 529 F.3d at 1038 (overcrowding ordinance passed and selectively enforced against *landlord* due to Hispanic tenant base). It is beyond dispute that Plaintiffs' research was targeted for termination

---

[4] Several Plaintiffs have alleged that they have expended substantial funds on "plans" and "studies" in reliance on terminated grant funding. *See, e.g.*, Doc. 64-6 (Umberson) ¶¶ 15, 17; Doc. 64-7 (Murchison) ¶ 18; Doc. 64-11 (Spinelli) ¶ 10; Doc. 64-13 (Moe) ¶¶ 15, 23; Doc. 64-14 (Brewer) ¶ 18; Doc. 64-15 (Garofalo) ¶¶ 12, 15, 18, 21, 24; Doc. 64-17 (Noar) ¶ 17; Doc. 64-21 (Peitzmeier) ¶ 15. These are not past expenditures for which they seek compensation but rather costs that will be squandered because of Defendants' actions if not restored. Such expenditures and preparations support a finding of injury-in-fact. *See Arlington Heights*, 429 U.S. at 262.

[5] *See*, e.g., Doc. 64-5 (Streed) ¶ 24; Doc. 64-6 (Umberson) ¶ 14; Doc. 64-8 (Hassmiller) ¶ 22; Doc. 64-15 (Garofalo) ¶¶ 7, 31; Doc. 64-18 (Littleton) ¶ 25; Doc. 64-19 (Poe) ¶¶ 27-28.

(or non-reauthorization) because it aimed to improve the health of the LGBTQI+ community. The termination letters themselves admit as much, *see generally* Doc. Nos. 64-4 through 64-23.

Settled precedent resolves the standing inquiry in Plaintiffs' favor. Plaintiffs have alleged that, through the Agency Directives and Challenged Agency Actions, Defendants, "motivated by discriminatory animus," have "interfere[d]" with Plaintiffs' "right to . . . associate with members of a protected class." *Young Apartments*, 529 F.3d at 1039. Defendants have "singled out" the Plaintiff researchers "for disadvantageous treatment because of [their] willingness to" take action benefiting members of a protected class. *Scott*, 716 F.2d at 1415. Thus, Plaintiffs "in [their] own stead suffered injury to [their] right to be free from official discrimination." *Id.*

Finally, several Plaintiffs are themselves members of the LGBTQI+ community.[6] As such, they themselves have standing to challenge *at least* the Agency Directives, which declare that the federal government will not fund research into the health needs of LGBTQI+ individuals. Such declaration *itself* causes untold dignitary harm to LGBTQI+ Americans.[7] *See Griffin*, 912 F.3d at 653. Defendants' actions have also deprived LGBTQI+ people of critical research into their health needs, which also "constitutionally recognized as cognizable" for Article III standing. *Friends of the Earth, Inc., v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 157 (4th Cir. 2000).[8]

This is not a case where "the impact on" the plaintiff "is plainly undifferentiated and common to all members of the public." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992) (citation modified). According to recent surveys, LGBTQI+ people make up less than 10% of the U.S. population.[9] Defendants' directive not to fund studies into LGBTQI+ health denies each of

---

[6] *See*, *e.g.*, Doc. 64-16 (Arayasirikul) ¶¶ 6, 27; Doc. 64-5 (Streed) ¶ 7; Doc. 64-23 (Phillips) ¶ 8.

[7] *See* Compl., ¶ 102; *see generally* Doc. 64-3 (Sheldon); Doc. 64-5 (Streed) ¶ 22; Doc. 64-19 (Poe) ¶ 16.

[8] *See generally* Doc. 64-3 (Sheldon) ¶ 2; Doc. 64-5 (Streed) ¶¶ 26-27; Doc. 64-12 (Birkett) ¶¶ 13, 20-21; Doc. 64-18 (Littleton) ¶ 21; Doc. 64-20 (Roe) ¶ 18; Doc. 64-22 (Soe) ¶¶ 32-33; *see also* Doc. 64-4 (Becchia).

[9] *See* https://news.gallup.com/poll/656708/lgbtq-identification-rises.aspx.

these LGBTQI+ Plaintiffs equal treatment under the law. Such harm easily establishes an injury-in-fact for Article III purposes. *See Allen v. Wright*, 468 U.S. 737, 755 (1984) (stigmatizing injury from discrimination can support standing where individuals are "personally denied equal treatment" by challenged conduct). And because it is traceable to Defendants' discriminatory actions and redressable by a court order, all LGBTQI+ Plaintiffs have standing.

**B.    GLMA has associational standing.**

"[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied," by the organization "assert[ing] 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Warth*, 422 U.S. at 511). Here, GLMA has associational standing to assert claims on behalf of its researcher members and its LGBTQI+ members. *See* PI Opening Br. 8-9.

**C.    The Healthcare Provider Plaintiffs have third-party standing.**

In addition to standing in their own right, Plaintiffs who are healthcare providers ("Provider Plaintiffs") have third-party standing to bring equal protection claims on behalf of their LGBTQI+ patients who are deprived of federally funded research into their unique health needs as a result of Defendants' discriminatory actions. *See, e.g.*, Compl. ¶¶ 20, 104, 135; *see also supra* pp. 6–7.

Courts have routinely recognized the ability of medical providers to bring claims on behalf of third parties—their patients. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 112-13 (1976). To assert a third party's rights, (1) "[t]he litigant must have suffered an 'injury in fact;'" (2) "the litigant must have a close relationship to the third party;" and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (citation omitted). As to the latter two requirements, "[t]he Supreme Court has 'been quite forgiving.'" *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 215 (4th Cir. 2020), as amended (Aug. 31, 2020) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)); *accord Caplin & Drysdale,*

*Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989); *Craig v. Boren*, 429 U.S. 190, 197 (1976). Indeed, the Court has justified "lessening of prudential limitations of standing," *Kowalski*, 543 U.S. at 130 (citation modified), in cases such as this one, "'when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights.'" *Md. Shall Issue*, 971 F.3d at 215 (quoting *Warth* 422 U.S. at 510).

Here, Provider Plaintiffs clearly meet the requirements to assert their LGBTQI+ patients' equal protection rights. A plethora of courts have found healthcare providers to have third-party standing to assert the equal protection rights of their LGBTQI+ patients, including when challenging funding restrictions. *See SFAF*, 2025 WL 1621636, at *12; *Washington v. Trump*, 768 F. Supp. 3d 1239, 1258 (W.D. Wash. 2025); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 36 (D.D.C. 2020); *City & Cnty. of San Francisco v. Azar*, 411 F. Supp. 3d 1001, 1011 (N.D. Cal. 2019).

As to the first requirement, Provider Plaintiffs undisputedly have suffered an "injury in fact." *See supra* Section I.A. And because they are the "regulated" parties, Provider Plaintiffs are "the least awkward" and most "obvious" claimants. *Craig*, 429 U.S. at 197.

The same goes for the second requirement, which requires that "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Whitman-Walker Clinic*, 485 F. Supp. 3d at 35 (citation modified). "Here, 'there can be no doubt' that the health-provider Plaintiffs will be 'motivated, effective advocate[s]' for their LGBTQ patients." *Id.* (quoting *Powers*, 499 U.S. at 414). "Doctors and their patients have a confidential relationship," *San Francisco*, 411 F. Supp. 3d at 1011; *see also SFAF*, 2025 WL 1621636, at *12; *Washington*, 768 F. Supp. 3d at 1258, which is much closer than other relationships deemed sufficient to confer standing. *See, e.g., Craig*, 429 U.S. at 197

(beer vendor and patrons); *Md. Shall Issue*, 971 F.3d at 216 (gun dealer and gun purchasers). And because of their close relationship to their patients, Provider Plaintiffs "are likely fully, or very nearly, as effective a proponent of the right as those patients." *SFAF*, 2025 WL 1621636, at *12 (citation modified). Indeed, "there can be no doubt that the health-provider Plaintiffs will be motivated, effective advocates for their LGBTQ patients." *Whitman-Walker Clinic*, 485 F. Supp. 3d at 35 (citation modified).

As to the third requirement, Provider Plaintiffs' LGBTQI+ patients "likely face barriers to being able to protect their own interests under these circumstances." *SFAF*, 2025 WL 1621636, at *12. "Plaintiffs need only show 'some hindrance' to the ability of their patients to vindicate their rights." *Id.* (quoting *Powers*, 499 U.S. at 410–11). This "prong does not require an absolute bar from suit." *Whitman-Walker Clinic*, 485 F. Supp. 3d at 36 (internal quotation marks and citation omitted). Here, "due to the sensitive nature of the subject matter, fear of retaliation from the federal government, and lack of capacity and/or financial resources, Physician Plaintiffs' patients are hindered from protecting their own interests." *Washington*, 768 F. Supp. 3d at 1258. For example, "transgender individuals in particular face obvious barriers to filing suit to assert their own rights, since disclosure of their transgender status exposes them to 'a substantial risk of stigma, discrimination, intimidation, violence, and danger.'" *SFAF*, 2025 WL 1621636, at *12 (quoting *Arroyo González v. Rosselló Nevares*, 305 F.Supp.3d 327, 333 (D.P.R. Apr. 20, 2018)). "It is enough that patients' fear of stigmatization operates as a powerful deterrent to bringing suit." *Whitman-Walker Clinic*, 485 F. Supp. 3d at 36 (citation modified).

In addition, GLMA has derivative standing to assert claims on behalf of the transgender patients of its healthcare provider members. "So long as the association's members have or will suffer sufficient injury to merit standing and their members possess standing to represent the

interests of third-parties, then [the] association[] can advance the third-party claims of their members." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 293 (3d Cir. 2002); *see also Fraternal Ord. of Police v. United States*, 152 F.3d 998, 1002 (D.C. Cir. 1998); *Ohio Ass'n of Indep. Sch. v. Goff*, 92 F.3d 419, 421–22 (6th Cir. 1996).

## II.   Binding Fourth Circuit precedent requires application of heightened scrutiny to Plaintiffs' equal protection claims.

Defendants have conceded that binding Fourth Circuit precedent holds that classifications based on transgender status are subject to heightened scrutiny. That has not changed.

In *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), as amended (Aug. 28, 2020), the Fourth Circuit held that "heightened scrutiny applies because transgender people constitute at least a quasi-suspect class." *Id.* at 610. The court found that: transgender people unquestionably have been subject to immense discrimination historically; being transgender bears no relation to a person's ability to contribute to society; transgender people are a discrete group with identifiable defining characteristics; and transgender people are a minority lacking political power. *Id.* at 610-13. The Supreme Court denied review. *See Gloucester Cty. Sch. Bd. v. Grimm*, 141 S. Ct. 2878 (2021). *Grimm* thus remains binding in this Circuit. *See Etheridge v. Norfolk W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993) ("A decision of a panel of this court becomes the law of the circuit and is binding … unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court.") (quotation and citation omitted).

This Court had reached the same conclusion in *M.A.B. v. Board of Education of Talbot County*, 286 F. Supp. 3d 704, 719 (D. Md. 2018), and has applied these binding precedents repeatedly ever since, *see, e.g.*, *Gilliam v. Dep't of Pub. Safety & Corr. Servs.*, 2024 WL 5186706, at *19 (D. Md. Dec. 20, 2024); *Stone v. Trump*, 400 F. Supp. 3d 317, 355 (D. Md. 2019), including most recently in *PFLAG v. Trump*, 766 F. Supp. 3d 535, 546 (D. Md. 2025). There is no reason—

or discretion—to depart from this precedent here.

The Supreme Court's recent decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), did not overrule *Grimm*, tacitly or otherwise. Indeed, it expressly declined to address what level of scrutiny applies to classifications based on transgender status. *Id.* at 1832 (noting the case "does not raise that question"). Because no nonfrivolous argument can be made that *Skrmetti* "specifically rejected the reasoning" of *Grimm*, the inquiry ends there—or at least it should. *Li v. Holder*, 666 F.3d 147, 150 (4th Cir. 2011). At the July 2 hearing, Defense counsel noted that three justices indicated through concurrences their conclusion that less exacting scrutiny should apply. *See Skrmetti*, 145 S. Ct. at 1849–67. But a minority opinion, even that of a Supreme Court justice, is not "binding precedent." *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997). It is equally significant that three other justices have concluded that when a law "discriminates on the basis of transgender status," that "is yet another reason it must be subject to heightened scrutiny." *Id.* at 1880. With no majority opinion addressing this issue at all, much less one that meets the "high bar" of being "impossible to reconcile" with *Grimm*, heightened scrutiny irrefutably remains the rule for transgender status classifications in this Circuit. *Short v. Hartman*, 87 F.4th 593, 605 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024).

It is similarly "well-settled" that the Supreme Court's order granting review of, vacating, and remanding *Kadel v. Folwell*, 100 F. 4th 122 (4th Cir. 2024), which like *Skrmetti*, concerns gender-affirming medical care, "has no precedential weight." *Texas v. United States*, 798 F.3d 1108, 1116 (D.C. Cir. 2015); *accord Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001) ("Our [GVR] order … was not a final determination on the merits.") (citation modified); *see Folwell v. Kadel*, 2025 WL 1787687 (U.S. Jun. 30, 2025). *Skrmetti*'s deliberate silence on the level of scrutiny for transgender status classifications instead means the *en banc* Fourth Circuit's reliance on and

11

reiteration of *Grimm* in *Kadel*, 100 F.4th at 143, "nonetheless binds future panels" in this Circuit. *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019). This is so regardless of any other implications *Skrmetti* may have on the reconsideration of *Kadel*. *See id.* Simply put, *Grimm* remains the binding precedent this Court *must* apply to the Agency Directives and Challenged Agency Actions.

Moreover, for the reasons explained in Plaintiffs' briefs, discrimination based on sexual orientation is likewise subject to heightened scrutiny. *See* PI Opening Br. 19-20.

III.    **All Plaintiffs have standing to bring claims under Section 1557 of the ACA.**

The constitutional requirements for standing do not differ with regards to Plaintiffs' Section 1557 claim. These requirements are easily met. *See supra* Section I.A.[10]

"The question of who can sue under a statutory cause of action turns on whether the party is within the statute's 'zone of interests.'" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) (quoting *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014)). "If a plaintiff is the sort of person the law intended to protect, he can press his claim." *Krakauer*, 925 F.3d at 656. This test applies nothing more than "'traditional principles of statutory interpretation,'" such that "the outcome will rise and fall on the meaning of the Congressionally enacted provision creating [the] cause of action." *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 708 (4th Cir. 2016) (quoting *Lexmark*, 572 U.S. at 128).

Here, Section 1557 directs that "an *individual* shall not … be excluded from participation in, *be denied the benefits of*, or *be subjected to discrimination* under, any health program or activity, any part of which is receiving Federal financial assistance, . . . or under any program or activity that is administered by an Executive Agency." 42 U.S.C. § 18116(a) (emphasis added). This "language makes clear the scope of interests it protects." *T.S. by & through T.M.S. v. Heart*

---

[10] And for the reasons outlined in Sections I.A-C, *supra*, individual researcher plaintiffs have standing in their own right, provider plaintiffs have third-party standing, and GLMA has associational and derivative third-party standing.

*of CarDon, LLC*, 43 F.4th 737, 741 (7th Cir. 2022). It "outlaws discrimination" on enumerated grounds "by healthcare entities receiving federal funds" and programs or activities administered by HHS and its subagencies. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022). The relevant zone of interests therefore includes *any individual* who is either denied the benefits of or subjected to discrimination under *any health program or activity*, including health and clinical research, either administered by Defendants or a federal funding recipient. *See T.S.*, 43 F.4th at 744 ("[T]he right to sue under section 1557 is not limited to plaintiffs who are intended to benefit from that assistance."); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 956 (D. Minn. 2018) ("Section 1557 expressly forbids that *anyone*, 'on the ground [of sex] … be denied the benefits of … any health program or activity.' (quoting 42 U.S.C. § 18116(a)) (emphasis added)).

Individual Plaintiffs, GLMA's researcher members, and Provider Plaintiffs' LGBTQI+ patients are indubitably *individuals*. Each was denied "the benefits of" NIH-funding for research projects involving LGBTQI+ health or health disparities affecting LGBTQI+ people. They have been discriminated based on multiple prohibited grounds, including sex, as well as race and national origin due to the Directives' prohibition on DEI-related research. Indeed, Section 1557 reaches discrimination "*on basis of*" any of prohibited grounds (like sex, race, or national origin). *See* 42 U.S.C. § 18116(a).[11] The protected characteristic need not be the plaintiffs' own. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179 (2005); *Kadel*, 446 F. Supp. 3d at 12.

Plaintiffs have standing to assert Section 1557 discrimination claims on their own behalf and in the case of Provider Plaintiffs, on behalf of their LGBTQI+ patients.

---

[11] Section 1557 incorporates the grounds prohibited under Title VI, Title IX, and the Age Discrimination. 42 U.S.C. § 18116(a), which prohibit discrimination "on the ground of race, color, or national origin," 42 U.S.C. § 2000d,"on the basis of sex." 20 U.S.C. § 1681(a), and "on the basis of age," 42 U.S.C. § 6101, respectively.

IV.    **Plaintiffs are entitled to injunctive relief barring implementation of the Agency Directives and Challenged Agency Actions against them, including reinstatement of terminated grants, under their equal protection and Section 1557 claims.**

"District courts have broad discretion to craft remedies based on the circumstances of a case." *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021). As shown below, preliminarily injunctive relief prohibiting the implementation or enforcement of an unlawful policy is a routine remedy for both equal protection and statutory discrimination claims. The Court therefore can and should preliminarily enjoin the implementation of the Agency Directives and Challenged Agency Actions as to Plaintiffs, including through the restoration of the terminated grants affecting Plaintiffs' research projects, under both the Fifth Amendment and Section 1557.

A.    **Equal Protection**

Courts routinely enjoin discriminatory action found to violate the Equal Protection Clause. *See Grimm*, 972 F.3d at 615 (affirming an injunction requiring a school to update school records to remedy equal protection violation); *PFLAG v. Trump*, 769 F. Supp. 3d 405, 455 (D. Md. 2025) (granting injunction prohibiting "conditioning, withholding, or terminating federal funding"); *Washington*, 768 F. Supp. 3d at 1282 (same); *City of Greensboro v. Guilford Cnty. Bd. of Elections*, 120 F. Supp. 3d 479, 492 (M.D.N.C. 2015) (enjoining enforcement of statute). That a grant or program will be reinstated does not render such injunctive relief improper. Courts regularly enjoin unconstitutional action whose cessation necessarily restores access to grant funds. *See Climate United Fund v. Citibank, N.A.*, 2025 WL 1131412 (D.D.C. Apr. 16, 2025); *Am. Bar Ass'n v. U.S. Dep't of Justice*, 2025 WL 1388891 (D.D.C. May 14, 2025); *Harris Cnty. v. Kennedy*, 2025 WL 1707665 (D.D.C. June 17, 2025); *Thakur v. Trump*, 2025 WL 1734471 (N.D. Cal. June 23, 2025); *Rhode Island v. Trump*, 2025 WL 1303868 (D.R.I. May 6, 2025); *Widakuswara v. Lake*, 2025 WL 1166400 (D.D.C. Apr. 22, 2025). This includes in the equal protection context. *See SFAF*, 2025 WL 1621636, at *15, *29; *SFAF*, No. 4:25-cv-01824-JST (N.D. Cal. June 13, 2025), Prelim. Inj.

Order, Dkt. No. 87 (enjoining conditioning or withholding of federal funding based on unconstitutional provisions *and ordering reinstatement of any terminated grant awards*).

**B.    Section 1557**

Section 1557 grants the Court similarly broad authority to grant injunctive relief that may necessarily result in the reinstatement of terminated programs or funding. The courts' authority to grant injunctive relief under the antidiscrimination statutes incorporated into Section 1557 is well-established. *See Cummings*, 596 U.S. at 216; *see also Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70–71 (1992). And Section 1557's implementing regulations envision remedial action to overcome the effects of the discrimination. *See* 45 C.F.R. § 92.6. Such relief often includes ordering *reinstatement of a program or funding*. *See*, *e.g.*, *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 834 (10th Cir. 1993) (upholding injunction requiring *reinstatement* of softball program, including hiring a coach and providing for a field and equipment); *C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, 2023 WL 8777349, at *10 (W.D. Wash. Dec. 19, 2023) (enjoining administration or enforcement of discriminatory exclusions and ordering *reprocessing of claims* without the discriminatory exclusions); *Barrett v. W. Chester Univ. of Pa. of State Sys. of Higher Educ.*, 2003 WL 22803477, at *16 (E.D. Pa. Nov. 12, 2003) (ordering *reinstatement* of gymnastics team and the *provision of funding* equal to at least that previously provided).

**C.    Scope of Relief**

As set forth in the enclosed modified proposed order, the Court can and should enter an order preliminary injunctive relief that extends to Plaintiffs, including all GLMA's researcher members. Under longstanding precedent, injunctive relief extends to all an organization's members. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986); *Warth*, 422 U.S. at 515; *see also Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 932 (2024) (Kavanaugh, J., concurring).

15

Dated: July 14, 2025

Respectfully submitted,

*/s/ Elizabeth Parr Hecker*

Justin D. Kingsolver*
**Bryan Cave Leighton Paisner LLP**
1155 F St. NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
justin.kingsolver@bclplaw.com

Elizabeth P. Hecker*
Anuj Vohra*
Ruben F. Reyna (D. Md. Bar 14949)
Heather Sanborn*
Tai Williams*
**Crowell & Moring LLP**
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
ehecker@crowell.com
avohra@crowell.com
rreyna@crowell.com
hsanborn@crowell.com
taiwilliams@crowell.com

Alexis Ward*
**Crowell & Moring LLP**
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
award@crowell.com

Michael Vine*
**Crowell & Moring LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
mvine@crowell.com

Omar Gonzalez-Pagan**
**Lambda Legal Defense
  and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: (212) 809-8585
Facsimile:  (855) 535-2236
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy*
**Lambda Legal Defense
  and Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006
Telephone: (202) 804-6245
Facsimile:  (855) 535-2236
kloewy@lambdalegal.org

Nathan Maxwell*
**Lambda Legal Defense
  and Education Fund, Inc.**
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Telephone: (312) 663-4413
Facsimile:  (855) 535-2236
nmaxwell@lambdalegal.org

Pelecanos*†
**Lambda Legal Defense
  and Education Fund, Inc.**
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: (213) 351-6051
Facsimile:  (855) 535-2236
pelecanos@lambdalegal.org

K. Lee Marshall*
Carlie Tenenbaum*
**Bryan Cave Leighton Paisner LLP**
Three Embarcadero Center, 7th Floor

San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
lee.marshall@bclplaw.com
carlie.tenenbaum@bclplaw.com

Matthew Stanford*
**Bryan Cave Leighton Paisner LLP**
Two North Central Avenue, Suite 2100
Phoenix, AZ 85004-4406
Telephone: (602) 364-7068
Facsimile: (602) 364-7070
matt.stanford@bclplaw.com

Alexander Rosen*
Jacob Zucker*
**Crowell & Moring LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
arosen@crowell.com
jzucker@crowell.com

\* Admitted *pro hac vice*.

\*\* Application for admission to D. Md. Bar
approved; swearing in pending.

† Mailing Address Only

## CERTIFICATE OF SERVICE

I certify that on this 14th day of July, 2025, I filed the foregoing Plaintiffs'

Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Injunction & Stay

Pending Judicial Review Pursuant to 5 U.S.C. § 705 and Proposed Order, electronically

with the Clerk of the Court using the CM/ECF system, which will send notice of such filing

on the following counsel of record:

>Michael Jackman Wilson
>Tarra DeShields
>Assistant United States Attorney
>U.S. Attorney's Office
>District of Maryland
>36 S. Charles Street, 4th Floor
>Baltimore, MD  21201
>Michael.Wilson4@usdoj.gov
>Tarra.Deshields@usdoj.gov
>
>*Counsel for Defendants*

_____/s/_____

Elizabeth P. Hecker