IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AMERICAN ASSOCIATION OF PHYSICIANS FOR HUMAN RIGHTS, INC. d/b/a GLMA: HEALTH PROFESSIONALS ADVANCING LGBTQ+ EQUALITY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH, *et al.*,<br><br>Defendants. | Civ. A. No. 25-cv-1620-LKG |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION AND REQUEST FOR A STAY PURSUANT TO 5 U.S.C. § 705**

KELLY O. HAYES
United States Attorney

Michael Wilson (Bar No. 18970)
Tarra DeShields (Bar No. 07749)
Assistant United States Attorneys
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800 (direct)
(410) 962-2310 (fax)

*Counsel for Defendants*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

    I.       Plaintiffs' Lack Standing to Assert Equal Protection and Section 1557 Claims ............ 3

    II.      Rational Basis Review Applies to Plaintiffs' Equal Protection Claim. ......................... 6

    III.     Plaintiffs' Are Not Entitled to Restoration of the Terminated NIH Grants. ................. 10

CONCLUSION ........................................................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) .................................................................................................. 7

*Cacchillo v. Insmed, Inc.*,
  638 F.3d 401 (2d Cir. 2011) ....................................................................................... 6

*Carney v. Adams*,
  592 U.S. 53 (2020) ..................................................................................................... 3

*Child Trends, Inc. v. U.S. Dep't of Educ.*,
  — F. Supp. 3d —, 2025 WL 1641148 ....................................................................... 11

*Do No Harm v. Pfizer Inc.*,
  126 F.4th 109 (2d Cir. 2025) ..................................................................................... 6

*Folwell v. Kadel*,
  No. 24-99, 2025 WL 1787687 ................................................................................. 10

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) ..................................................................................... 9

*Kadel v. Folwell*,
  100 F.4th 122 (4th Cir. 2024) .................................................................................. 10

*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992) ................................................................................................... 2

*Md. Shall Issue, Inc. v. Hogan*,
  971 F.3d 199 (4th Cir. 2020) .................................................................................. 3, 4

*Murthy v. Missouri*,
  603 U.S. 43 (2024) (emphasis added) ....................................................................... 3

*Powers v. Ohio*,
  499 U.S. 400 (1991) ................................................................................................... 5

*Randall v. United States*,
  95 F.3d 339 (4th Cir. 1996) ..................................................................................... 10

*San Antonio Independent School Dist. v. Rodriguez*,
  411 U.S. 1, 28 (1973) ................................................................................................. 9

*Tennessee v. Becerra,*
  739 F. Supp. 3d 467 (S.D. Miss. 2024) ..................................................................... 8

*United States v. Skrmetti*,
  605 U.S. —, 145 S.Ct. 1816 (2025) .................................................................. 6, 7, 8

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  485 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................ 4-5, 6

*Winter v. Nat. Res. Defense Council, Inc.*,
  555 U.S. 43 (2024) .................................................................................................. 3, 4

*Zeneca Ltd. v. Novopharm*,
  919 F. Supp. 193 (D. Md. 1996) ................................................................................ 10

**Statutes**

5 U.S.C. § 705 ................................................................................................................ 18, 1

42 U.S.C. § 18116 ............................................................................................................... 4

**Other**

42 C.F.R. §§ 438.3, 438.206, 440.262, 460.98, 460.112 ................................................... 8

45 C.F.R. §§ 92.5, 92.6, 92.7, 92.8, 92.9, 92.10, 92.101, 92.206-211, 92.301, 92.303, 92.304 ................. 8

89 Fed.Reg. 37522, 37594 (May 6, 2024) ......................................................................... 8

Rule 65 ............................................................................................................................... 1

Rule 105.2 .......................................................................................................................... 1

In accordance with Rule 65 of the Federal Rules of Civil Procedure and Local Rule 105.2, and pursuant to the Court's Order of July 3, 2025 (ECF No. 83), Defendants,[1] by and through their undersigned counsel, respectfully submit the following supplemental memorandum of law in opposition to the plaintiffs' Motion (ECF No. 64) and state as follows:

## INTRODUCTION

The plaintiffs in this case seek the extraordinary relief of a preliminary injunction following the termination of research grants related to LGBTQI+ health and the "with[holding] from review" of certain grant applications. *See* ECF No. 1, Prayer for Relief at ¶ B. They further request that the Court enjoin the defendants from "implementing, enforcing, or effectuating" Agency Directives or "agency guidance setting forth 'agency priorities' prohibiting federal funding'" at issue in the litigation and declare the Agency Directives and grant terminations "unlawful or unconstitutional." *Id*. at ¶ A. Penultimately, the plaintiffs urge that the terminated grants "be deemed without effect and be vacated," and that the defendants "immediately reinstate Plaintiffs' affected NIH-funded grants and restore full access to all funds unlawfully withheld." *Id*. at ¶ C.

The Court held a hearing on July 2, 2025, to hear argument on the plaintiffs' Motion for a Preliminary Injunction and Stay, ECF 64, and requested that the parties submit supplemental briefing on the plaintiffs' discrimination-related claims – the Fifth Amendment Equal Protection and Section 1557 of the Affordable Care Act claims. ECF No. 83. Specifically, the Court requested that the parties address whether the plaintiffs have standing to raise the Equal Protection and Section 1557 claims. The plaintiffs, comprised of three groups roughly, are individuals whose research grants were terminated or withheld from NIH review, a non-profit organization

---

[1] Defined terms used but not defined herein have the meaning assigned to them in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for A Preliminary Injunction and Plaintiffs' Request for A Stay Pursuant to 5 U.S.C. § 705 (the "Motion").

("GLMA") geared to ensuring "health equity" for LGBTQI+ people and equality for LGBTQI+ health professionals and whose members, at least a few, had research grants terminated or withheld from review, and health care providers who purport to assert claims on behalf of their LGBTQI+ patients.  ECF No. 1 at ¶¶ 20-37; ECF No. 64-1 at 7-9.  The parties have also been directed to further brief what injunctive relief, if any, flows from both such constitutional and statutory claims and the level of scrutiny applicable specifically to the Equal Protection claim.  ECF No. 83 at 1.

As was made clear in *Lujan v. Defs. of Wildlife.* 504 U.S. 555, 561 (1992), the party invoking federal jurisdiction bears the burden of establishing the elements of standing.  "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e..*, with the manner and degree of evidence required at the successive stages of the litigation." *Id*.  The plaintiffs rely, in part, on third-party standing to press the Equal Protection and Section 1557 claims because certain of the plaintiffs -- at least two – see ECF No. 1 at ¶¶ 21, 35, maintain that they are healthcare providers to LGBTQI+ individuals.  The plaintiffs do not, however, adequately satisfy their burden in establishing third-party standing.  The general rule in the case law as pertains to standing is that a litigant must assert his or her own legal rights and interests and cannot base a claim to relief on the legal rights or interests of third parties.  There is no cause to depart from that rule here because the plaintiffs have not made any showing, beyond mere conclusory statements, that the patients of the plaintiff healthcare providers are precluded from vindicating their own rights – a deficit fatal to the Equal Protection and Section 1557 claims.

Although the plaintiffs will doubtlessly continue to vociferate that gender-based classifications, including transgender status and sexual orientation, demand heightened scrutiny, acceptance of that viewpoint should not be reflexively automatic.  The Supreme Court has not held that transgender individuals are a suspect or quasi-suspect class for Equal Protection purposes.

Although the Fourth Circuit <u>has</u> recognized such, the vitality of that holding is now an open question in the wake of recent Supreme Court case law. The more reasoned approach, as is pertinent here, is to apply the rational basis test to Plaintiffs' Equal Protection claim to the extent that the Court concludes that the threshold requirement of standing is met. If the Court further concludes that some relief is warranted, the relief should be tailored to enjoining future grant terminations and not to the terminated grants because the proper forum for the latter is the Court of Federal Claims as more fully explained in the Defendants' Opposition (ECF No. 70) to Plaintiffs' Motion for Preliminary Injunction and Request for Stay.

## **ARGUMENT**

I. **Plaintiffs' Lack Standing to Assert Equal Protection and Section 1557 Claims**.

Plaintiffs bear the burden of establishing standing "as of the time" they brought this lawsuit and also of "maintaining it thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). "At the preliminary injunction stage, then, the plaintiff[s] must make a 'clear showing' that [they are] 'likely' to establish *each* element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (emphasis added) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008)). To do so, Plaintiffs must "demonstrate a substantial risk that, in the near future, they will suffer an injury that is traceable to a Government defendant and redressable by the injunction they seek." *Murthy*, 603 U.S. at 49–50.

The defendants have addressed standing in its Opposition (ECF No. 70 at 18-19) and incorporate those arguments herein by reference and focus now on third-party standing. As relevant here, to establish third-party standing, the Supreme Court requires "parties seeking third-party standing to make two showings." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 215 (4th Cir. 2020). "First, the court must ascertain whether the party asserting the right has 'a close

3

relation[ship]' with the person who possess the right." *Id.* (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). "Second, the court must consider whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.*

Plaintiffs' theory of Equal Protection standing—at least at the preliminary injunction stage—is far from a "clearing showing." *See Winter*, 555 U.S. at 7. Plaintiffs assert that they have third-party standing to mount an Equal Protection claim, ECF No. 64-1 at 8, on behalf of a loosely defined population of would-be beneficiaries of the research Plaintiffs performed. But the research grants at issue have been terminated for several months, and Plaintiffs have provided scant concrete examples of impending, imminent, and near-certain *future* harm arising from the *past* cancellation of their research grants. Yet, the remedy Plaintiffs seek at this point—the immediate restoration of grant funding—is predicated on the existence of near-certain harm if the Court does not grant the extraordinary relief of reinstating Plaintiffs' grant funding. To this point, there is no indication that the putative individuals Plaintiffs seek to represent, *i.e.*, those facing a specific risk of imminent harm, are unable to vindicate their own Equal Protection claims.

The plaintiffs fare no better with respect to the Section 1557 claim. As the Court is aware, that provision of the Affordable Care Act, 42 U.S.C. § 18116(a), prohibits excluding an individual from participation in, being denied the benefits of, or being subjected to discrimination under any federally funded health program or activity on grounds protected by Title VI, Title IX, the Age Discrimination Act and the Rehabilitation Act. Section 1557 does not have its own anti-discrimination language; it simply incorporates the grounds protected by the above enumerated anti-discrimination statutes. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 36 (D.D.C. 2020) ("[Section 1557 and its implementing regulations] requires would-be plaintiffs to employ the particular enforcement mechanisms and accompanying

legal standards available under each of Section 1557's incorporated statutes, depending on the precise ground of discrimination asserted.").

Logically, the rights protected by Section 1557 are personal in nature given the statute's incorporation of the above-referenced anti-discrimination laws. Although the plaintiff health care providers assert third-party standing to raise the Section 1557 claim and they, by virtue of the provider-patient relationship, may be deemed as having a close relationship to the third party, that is, their LGBTQI+ patients, departure from the default rule that a litigant must assert his or her own legal rights and interests requires, as explained in the opening paragraphs above, a showing that there is some hindrance to the third party's ability to protect his or her own interests. *Powers*, 499 U.S. at 410-11. It is with respect to this factor where the plaintiff health care providers founder.

Determining the existence of a hindrance requires examining the "likelihood and ability of the third parties . . . to assert their own rights." *Id*. at 414. Deterrence from filing suit due to privacy concerns, imminent mootness of the case, and systemic practical challenges to pursuing one's own rights constitute the type of "hindrance" permitting the rare exception of third-party standing. *Id*. While Plaintiffs Streed, Roe, and health care provider members of GLMA asseverate that their LGBTQI+ patients "face barriers to asserting their own claims and protecting their own interests," and are "negatively impacted," ECF No. 1 at ¶¶ 37-38, nothing in the way of a showing of "some hindrance" to the ability of their patients to assert their own rights has been presented to this Court beyond mere conclusory assertions. *See* ECF No. 64-5, 64-20 (Declarations of Plaintiff health care providers presenting nothing to support third-party standing).

Conclusory statements do not and should not suffice to satisfy this burden on a motion for a preliminary injunction especially. Indeed, to establish standing in the context of a preliminary

injunction motion, a plaintiff "may not rest on mere allegations but must set forth by affidavit or other evidence specific facts" supportive of the standing elements. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Lujan*, 497 U.S. at 907 n.8). If a plaintiff fails to establish standing, the Court need not address the factors considered in deciding whether to grant a motion for a preliminary injunction and should instead deny the motion. *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 121-22 (2d Cir. 2025).

Here, there has been no specific factual showing of, for example, financial hardship, lack of capacity, fear of stigmatization or anything else to remotely establish proper third-party standing in this case as relates to the Section 1557 claim. *Compare Whitman-Walker*, 485 F. Supp. 3d at 36 (observing that patients' fear of stigmatization as deterrent to bringing suit and permitting third-party standing). The Court should find that the plaintiffs have not established a clear showing of the likelihood of success in establishing third-party standing on either the Equal Protection or Section 1557 claims and so should deny the preliminary injunction motion.

## II. <u>Rational Basis Review Applies to Plaintiffs' Equal Protection Claim.</u>

The Supreme Court has not "held that transgender individuals are a suspect or quasi-suspect class" for equal protection purposes, but three Justices recently made clear—for reasons nearly identical to those Defendants set forth in their Opposition (*see* ECF No. 70 at 22–23)—that they would decline to do so. *United States v. Skrmetti*, 605 U.S. ----, 145 S.Ct. 1816, 1832 (2025). In *Skrmetti*, the Supreme Court considered a state law that restricted certain medical treatments for minors whose "gender identity does not align with their biological sex." *Id.* at 1824. The state statute under review provides that "no minor may be administered puberty blockers or hormones to treat gender dysphoria, gender identity disorder, or gender incongruence" but "minors of any sex may be administered puberty blockers or hormones for other purposes." *Id.* at 1831. The

6

plaintiffs argued that the statute classified on the basis of sex because a minor "whose biological sex is female cannot receive puberty blockers or testosterone to live and present as a male, but an adolescent whose biological sex is male can, while an adolescent whose biological sex is male cannot receive puberty blockers or estrogen to live and present as a female, but an adolescent whose biological sex is female can." *Id.* at 1830. The Supreme Court rejected that argument, holding that access to medical treatment did not turn on sex but rather on age and the intended purpose of the medical treatment. *Id.* at 1829. This is so because both boys and girls can get access to the medical treatment if it is not for a restricted use. *Id.* In reaching this conclusion, the Court stressed that it "has never suggested that mere reference to sex is sufficient to trigger heightened scrutiny." *Id.* The Court further explained that the focus of sex-based equal protection claims is whether the law "prohibit[s] conduct for one sex that it permits for the other." *Id.* at 1831.

The Supreme Court also declined to extend the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), beyond the Title VII context to equal protection challenges. *Id.* at 1834. As Justices Thomas and Alito explained in their concurring opinions in *Skrmetti*, the "but-for cause" analysis in *Bostock* derived from "the specific language employed in Title VII" has no application "in cases in which a law is challenged as an unconstitutional sex classification." *Id.* at 1860 (Alito, J., concurring); *accord id.* at 1838 ("Extending the *Bostock* framework here would depart dramatically from this Court's Equal Protection Clause jurisprudence") (Thomas, J., concurring). For equal protection purposes, the question is whether NIH's cancellation of grants relating to transgender or DEI research treats the sexes the same. Because it does, rational basis review applies.

7

Separately, the Fourth Circuit's recognition of transgender status as a quasi-suspect class for Equal Protection purposes has been called into serious question. As noted *supra*, three Justices in *Skrmetti* authored concurring opinions explaining why they would not recognize transgender individuals as a quasi-suspect class.[2] For example, Justice Barrett, in a concurring opinion joined by Justice Thomas, began by observing that "the set" of individuals subject to heightened scrutiny for Equal Protection purposes "has remained virtually closed" for more than four decades, and therefore plaintiffs advocating for the recognition of a new protected category "face a high bar" in opening this long-closed set of categories. *See Skrmetti*, 145 S.Ct. at 1850 (Barrett, J., concurring). And for much of the same reasons Defendants argued in their Opposition, Justice Barrett concluded that transgender individuals cannot meet this high bar. *Id.*; *see also* ECF No. 70 at 22–23.

Justice Barrett began by noting that "transgender status is not marked by the same sort of obvious, immutable, or distinguishing characteristics as race or sex." *Skrmetti*, 145 S.Ct. at 1851 (cleaned up). This is so because transgender individuals are not "defined by a trait that

---

[2] Plaintiffs cite *Nondiscrimination in Health Programs and Activities*, 89 Fed.Reg. 37522, 37594 (May 6, 2024), quoting the preamble, "Though '[h]ealth research and clinical trial protocols' may 'specify[] an individual's sex … where those characteristics are relevant to the clinical trial[,] …health research and protocols may result in discrimination,' where they 'disallow[] participation based on gender identity rather than on the basis of scientific requirement of the research.'" ECF No. 79, Pl. Reply at 12.

In *Tennessee v. Becerra,* the court stayed the 2024 Section 1557 rule as follows: "the July 5, 2024 effective date of the final rule entitled Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024) is STAYED nationwide pursuant to 5 U.S.C. § 705, in so far as this final rule is intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity in the following regulations: 42 C.F.R. §§ 438.3, 438.206, 440.262, 460.98, 460.112; 45 C.F.R. §§ 92.5, 92.6, 92.7, 92.8, 92.9, 92.10, 92.101, 92.206-211, 92.301, 92.303, 92.304." It also enjoined HHS "nationwide from enforcing, relying on, implementing, or otherwise acting pursuant to the May 2024 Rule's provisions concerning gender identity." 739 F. Supp. 3d 467, 486 (S.D. Miss. 2024).

is definitively ascertainable at the moment of birth," and often begin "to experience gender dysphoria at varying ages—some from a young age, others not until the onset of puberty." *Id.* (cleaned up). Thus, transgender individuals also do not constitute a discrete group of individuals, rather, "the category of transgender individuals is 'large, diverse, and amorphous.'" *Id.* at 1852 (*San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973) (declining to recognize "poverty" as a protected status)). "The boundaries of the group, in other words, are not defined by an easily ascertainable characteristic that is fixed and consistent across the group." *Id.* "Finally, holding that transgender people constitute a suspect class would require courts to oversee all manner of policy choices normally committed to legislative discretion." *Id.*[3]

In a separate concurring opinion, Justice Alito echoed Justice Barrett's observations that "[t]ransgender status is not 'immutable,' and as a result, persons can and do move into and out of the class" and that "[m]embers of the class differ widely among themselves, and it is often difficult for others to determine whether a person is a member of the class." *Id.* at 1861 (Alito, J., concurring). Likewise, Justice Alito observed that "transgender individuals have not been subjected to a history of discrimination that is comparable to past discrimination against the groups we have classified as suspect or 'quasi-suspect.'" *Id.* Accordingly, Justice Alito also found that "transgender status does not qualify under our precedents as a suspect or 'quasi-suspect' class." *Id.* at 1860.

The analyses of the two concurring opinions above are notably squarely at odds with the Fourth Circuit's holdings in *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020)

---

[3] Justice Barrett also noted that while transgender individuals may have been subjected to "a history of private discrimination," there was little evidence provided by the parties in that case that transgender individuals had been subjected to a history of state-sponsored discrimination. *Id.* at 1853–55. Justice Barrett added, "[B]ecause the group of transgender individuals is an insufficiently discrete and insular minority, th[is] question is largely academic." *Id.* at 1865.

and more recently in *Kadel v. Folwell*, 100 F.4th 122, 143 (4th Cir. 2024). And to this point, on June 30, 2025, the Supreme Court vacated the Fourth Circuit's opinion in *Kadel*, in light of the Court's holding in *Skrmetti*. *See Folwell v. Kadel*, No. 24-99, 2025 WL 1787687 (SCOTUS 2025) ("The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Fourth Circuit for further consideration in light of" *Skrmetti*). The vacatur of *Kadel* means that it is a legal nullity. *Zeneca Ltd. v. Novopharm*, 919 F. Supp. 193, 196 (D. Md. 1996). And while the holding in *Grimm* has not been vacated as of yet, the analysis employed by the Fourth Circuit in that case in recognizing transgender status as a quasi-suspect class has been expressly rejected by three Supreme Court Justices. Whether and to what degree the Fourth Circuit will adhere to its prior analysis in light thereof is an open question. Defendants submit that for these reasons, and for purposes of the preliminary injunction motion, the Court should apply the rational basis to Plaintiffs' Equal Protection claim. When that test is applied, as explained in Defendants' Opposition, the Equal Protection claim fails.

### III.     <u>**Plaintiffs' Are Not Entitled to Restoration of the Terminated NIH Grants.**</u>

As Defendants argued in the Motion and at the July 2, 2025 hearing, the appropriate vehicle for Plaintiffs to challenge the termination of their research grants is a claim under the Tucker Act. *See* ECF No. 70 at 12–18. "The Tucker Act grants jurisdiction to the United States Court of Federal Claims 'to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort.'" *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) (quoting 28 U.S.C. § 1491). Said differently, Congress has specifically provided *the* venue for plaintiffs to litigate contractual claims—like those here—and

10

simultaneously curtailed the jurisdiction of that venue to hear other types of cases, including Equal Protection claims.

As Defendants argued in their Opposition to the Motion, recent Supreme Court and Fourth Circuit decisions suggest that claims challenging the termination of individual government grants are Tucker Act claims. *See* ECF No. 70 at 13–16. Thus, Defendants are "likely to succeed in showing that the Tucker Act precludes Article III courts from exercising jurisdiction over *any* claims <u>pertaining to individual grant agreements</u>, even if those claims are brought as <u>constitutional</u> or *ultra vires* actions." *Child Trends, Inc. v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2025 WL 1641148, at *8 (D. Md. June 11, 2025) (italics in original; underlining added). To the extent that Plaintiffs argue that they cannot obtain the precise relief requested in the Court of Federal Claims, Op. Br. at 31-32, that does not change the result. The Fourth Circuit Court of Appeals has repeatedly held: "That the Court of Claims cannot provide the precise relief requested is no grounds for denying its jurisdiction over the claim." *Ginsberg v. United States*, 707 F.2d 91, 93-94 (4th Cir. 1983). Accordingly, because the Court of Federal Claims is the exclusive venue for Plaintiffs to litigate claims related to their terminated grants, the appropriate remedy in this case would be limited to equitable relief enjoining future grant terminations by NIH.

## **CONCLUSION**

For the reasons set forth in Defendants' Opposition, at the hearing on July 2, 2025, and herein, the Court should deny the Plaintiffs' Motion.

Respectfully submitted,

KELLY O. HAYES
United States Attorney

/s/
Michael Wilson (Bar No. 18970)
Tarra DeShields (Bar No. 07749)
Assistant United States Attorneys
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800 (direct)
(410) 962-2310 (fax)

*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 14, 2025, I electronically filed and served a copy of the foregoing on all parties receiving CM/ECF notices in this case.

/s/
Tarra DeShields