IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division: Montgomery County)

| | |
|---|---|
| AMERICAN ASSOCIATION OF PHYSICIANS FOR HUMAN RIGHTS, INC. d/b/a GLMA: HEALTH PROFESSIONALS ADVANCING LGBTQ+ EQUALITY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL INSTITUTES OF HEALTH, *et al.*, <br><br> *Defendants*. | Civil Action No. 8:25-cv-01620-LKG |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION & STAY PENDING JUDICIAL REVIEW PURSUANT TO 5 U.S.C. § 705**

**I.  Plaintiffs Have Standing to Assert Equal Protection and Section 1557 Claims.**

Despite having ample opportunity to do so, Defendants still cannot muster any argument or case law calling into question Individual Plaintiffs' standing to bring equal protection and Section 1557 claims *in their own right*. Defendants have never challenged Plaintiffs' standing to bring their own Section 1557 claims. *See* Doc. 64-1 at 7–8; Doc. 79 at 12; Doc. 84 at 4–5, 12–13. Nor have they made any argument that GLMA lacks associational standing, which is also easily demonstrated. *See* Doc. 64-1 at 8–9; Doc. 79 at 7; Doc. 84 at 7.

Additionally, Defendants offer no authority undermining Plaintiffs' standing to assert *their own* equal protection claims.[1] Defendants' supplemental brief failed to address the cases set forth in Plaintiffs' reply brief, Doc. 79 (at 8–9) holding that a plaintiff asserting an equal protection claim need not be a member of the protected class being discriminated against to have standing to sue *in their own right* if that plaintiff's injury is nevertheless attributable to that discrimination. Indeed, Defendants still have not contested the Fourth Circuit's holding that if a plaintiff is singled out for disadvantageous treatment because of his willingness to serve minorities, "then [the plaintiff] in his own stead suffered injury to his right to be free from official discrimination." *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1415 (4th Cir. 1983). Such holding is binding on this Court.

In their supplemental brief, for the first time, Defendants challenge Provider Plaintiffs' third-party standing to bring claims on behalf of their patients. Specifically, they argue that the injuries to LGBTQI+ patients are not imminent and LGBTQI+ patients purportedly do not face sufficient barriers to assert their own rights. Neither of these arguments hold water.

First, it defies reality to claim that the LGBTQI+ patients of the Provider Plaintiffs are not

---

[1] The only argument Defendants have made in this regard was a citation to *Wilcox v. Lyons*, 970 F.3d 452, 460 (4th Cir. 2020), which as explained in Plaintiffs' reply brief, Doc. 79 (at 9) is wholly inapposite.

suffering imminent injuries. These patients are *currently* suffering stigmatic and dignitary harms. *See Allen v. Wright*, 468 U.S. 737, 755 (1984); *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019). Indeed, one "cannot fathom discrimination more direct than the plain pronouncement of a policy resting on the premise that the group to which the policy is directed does not exist." *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 444 (D. Md. 2025). And the record contains ample evidence of direct harm to Provider Plaintiffs' patients.[2]

As to third-party standing, Defendants dispute *only* one part of the applicable test—that there is some hindrance to the third parties' ability to protect their own interests. *See Powers v. Ohio*, 499 U.S. 400, 410–11 (1991). As to this requirement, "[t]he Supreme Court has been quite forgiving." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 215 (4th Cir. 2020), as amended (Aug. 31, 2020) (citation modified). This prong does not require an absolute bar, but rather *some hindrance* to the ability to sue. *See* Doc. 84 at 9. LGBTQI+ people irrefutably experience discrimination, stigmatization, and societal opprobrium because of their sexual orientation and/or transgender status on a level that hinders their ability to vindicate their rights. *See, e.g.*, *S.F. A.I.D.S. Found. v. Trump*, 2025 WL 1621636, at *12 (N.D. Cal. June 9, 2025); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 36 (D.D.C. 2020). This especially true here, where this administration has made clear its intent to erase any recognition of LGBTQI+ people, particularly transgender people, by our government or society.[3] Such circumstances leave little doubt that Provider Plaintiffs' patients are hindered from protecting their

---

[2] *See, e.g.*, Doc. 64-15 (Garofalo) ¶¶ 15, 18, 21, 24 (thousands of patients left without interventions related to HIV and sexual health); Doc. 64-11 (Spinelli) ¶¶ 10, 17 (patients left without access to medication and needed monitoring); Doc. 64-20 (Roe) ¶¶ 19-20 (transgender and gender-diverse young patients left without tool to measure disordered eating in their population notwithstanding its disparate impact); Doc. 64-5 (Streed) ¶ 20 (transgender patients deprived from testing of measures pertaining to their cardiovascular health).

[3] *See Orr v. Trump*, 2025 WL 1145271, at *14 (D. Mass. Apr. 18, 2025); *Talbott v. United States*, 775 F. Supp. 3d 283, 331–32 (D.D.C. 2025).

own interests. *Washington v. Trump*, 768 F. Supp. 3d 1239, 1258 (W.D. Wash. 2025).

## II.  Heightened Scrutiny Applies to Plaintiffs' Equal Protection Claims.

First, Defendants do not dispute Plaintiffs' argument that governmental discrimination based on *sexual orientation* receives heightened scrutiny. Doc. 64-1 at 19–20; Doc. 84 at 12.

As to the level of scrutiny for *transgender status* classifications, Defendants expressly conceded during the July 2 hearing that binding Fourth Circuit precedent compels the application of heightened scrutiny. *See, e.g.*, 7/2/2025 Preliminary Injunction ("PI") Hr'g. Tr. 65:8–14. Unlike in *United States v. Skrmetti*, 145 S. Ct. 1816, 1829 (2025), where the Court found the law at issue classified based on age and medical condition, not transgender status or sex, the Agency Directives at issue here *expressly* prohibit federal funding for research relating to "transgender issues." *See, e.g.*, Doc. 1, Compl., ¶¶ 88–93. *Skrmetti* thus has no bearing here. Indeed, the Court in *Skrmetti* expressly stated that it *was not addressing* Plaintiffs' arguments that classifications based on transgender status are subject to heightened scrutiny. *See Skrmetti*, 145 S. Ct. at 1832. Defendants admitted as much at the July 2 hearing. *See* PI Hr'g. Tr. 64:14-19. Accordingly, as previously explained (Doc. 84 at 10–12; PI Hr'g Tr. 54:4-6), the Fourth Circuit's holding "that heightened scrutiny applies because transgender people constitute at least a quasi-suspect class" remains binding on this Court. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 610 (4th Cir. 2020), as amended (Aug. 28, 2020); *see also* PI Hr'g. Tr. 65:4-5 (government counsel admitting that "*Grimm* absolutely is still good law"). This is not a close question—or even an open one.[4]

In any event, Defendants do not deny that the Agency Directives' and Challenged Agency Actions' animus-riddled roots provide an independent reason for subjecting them to some level of

---

[4] The Supreme Court never "declined to extend the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), beyond the Title VII context to equal protection challenges," as Defendants' wrongly suggest. Doc. 85 at 7. Rather, the Court expressly declined to decide the question. *Skrmetti*, 145 S. Ct. at 1834 ("We have not yet considered whether *Bostock*'s reasoning reaches beyond the Title VII context, and *we need not do so here*.") (emphasis added).

3

heightened review. *See* Doc. 64-1 at 20–22.[5]

### III. The Court Has the Power to Award the Injunctive Relief Requested by Plaintiffs on Their Equal Protection and Section 1557 Claims.

Defendants do not address and, thus, tacitly concede that the Court has authority to award injunctive relief for equal protection and Section 1557 claims. They do not identify any authority at odds with Plaintiffs' showing that district courts, including this Court, routinely enjoin unconstitutional action, including when that action's cessation necessarily results in restored access to previously withheld funds, including for equal protection violations. *See* Doc. 84 at 14–15. They similarly sidestep the Court's settled statutory authority to award injunctive relief, including reinstatement of a program or funding, under Section 1557, *see* Doc. 79 at 15, which, it bears repeating, contains its own sovereign immunity waiver. *See* 42 U.S.C. § 18116(a); Doc. 79 at 4–5.

In fact, Defendants' brief omits any discussion of "what injunctive relief the Plaintiffs may obtain on [the equal protection and Section 1557] claims," as the Court ordered on July 3. Doc. 83 at 1. Defendants instead dedicate what should have been a discussion of *remedies* to recycling its *jurisdictional* argument that the Tucker Act makes the Court of Federal Claims the exclusive venue for Plaintiffs to pursue their claims. Doc. 85 at 10-11. They do so in vain.

Defendants' renewed reliance on the Tucker Act ignores the Court's stated view, shared at the July 2 hearing, that the Tucker Act likely *does not* impede Plaintiffs' success on the merits *as to their equal protection and Section 1557 claims*, about which the Court said Plaintiffs were "on

---

[5] In a footnote, Defendants cite *Tennessee v. Becerra*, 739 F. Supp. 3d 467, 486 (S.D. Miss. 2024), which enjoined parts of the 2024 Rule, to argue discrimination based on sex does not encompass discrimination based on gender identity. *But see Walker v. Kennedy*, 2025 WL 1871070, at *4 (E.D.N.Y. July 8, 2025). But Plaintiffs do not cite the Rule for its definition of "on the basis of sex" but rather its definitions of "covered entity" and "health program or activity," neither of which is enjoined. In any event, "[t]he Fourth Circuit looks to Title VII . . . to guide the 'evaluation of claims under Title IX.'" *Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F. Supp. 3d 567, 590 (D. Md. 2021) (quoting *Grimm*, 972 F.3d at 616). The test announced in *Bostock* is therefore the appropriate test to determine whether a policy discriminates in violation of the ACA. *See id.*; *see also Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022).

stronger footing." *See* PI Hr'g. Tr. 87:23-88:21.[6] Thus, Defendants' jurisdictional argument is not only unresponsive to the Court's questions, but also effectively rendered moot by the Court's aforementioned view. And notably, of the very few decisions to hold that the Tucker Act deprived a district court of jurisdiction as to APA claims involving terminated grants, not one involved equal protection or Section 1557 claims. *See* Doc. 85 at 11.

At bottom, Plaintiffs seek *only* to be restored to the position they would have occupied absent the Agency Directives and Challenged Agency Actions. The Fifth Amendment's Equal Protection component and Section 1557 empower the Court to do just that by enjoining those agency actions. Defendants do not dispute this Court's authority to award such relief. They merely object to the fact that a necessary effect of the injunction will be to restore access to the grant funds that support Plaintiffs' research. But the resulting restoration of unlawfully withheld funds does not render such relief any less prospective—or any less injunctive. Rather, as this Court has repeatedly recognized, recompense and reinstatement often go hand-in-hand. *See Elev8 Baltimore, Inc. v. Americorps*, 2025 WL 1865971, at *13 (D. Md. July 7, 2025) ("an injunction restoring . . . grants and programs" "is not monetary damages; it is equitable relief"); *Green & Healthy Home Initiatives, Inc. v. EPA*, 2025 WL 1697463, at *13 (D. Md. June 17, 2025) (seeking an injunction that "necessarily involves monetary *relief*" still "seek[s] equitable and declaratory relief . . . on a prospective basis"); *see also EEOC v. Balt. Cnty.*, 904 F.3d 330, 335 (4th Cir. 2018) ("[A] back pay award under Title VII is a discretionary *equitable* remedy that a court may select in awarding relief to a plaintiff."); *EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 988 (4th Cir. 1980) ("[The FLSA] authorizes . . . injunctive relief to restrain violations of the Act, including . . . any withholding of payment of minimum wages or overtime compensation . . . ."). This case is no exception.

---

[6] For the reasons set forth in their briefs and the July 2 hearing, Plaintiffs disagree with the Court's preliminary view that the Tucker Act deprives it of jurisdiction as to their APA claims.

5

Dated July 18, 2025

Respectfully submitted,

<u>/s/ Elizabeth Parr Hecker</u>

Justin D. Kingsolver*
**Bryan Cave Leighton Paisner LLP**
1155 F St. NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
justin.kingsolver@bclplaw.com

Elizabeth P. Hecker*
Anuj Vohra*
Ruben F. Reyna (D. Md. Bar 14949)
Heather Sanborn*
Tai Williams*
**Crowell & Moring LLP**
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
ehecker@crowell.com
avohra@crowell.com
rreyna@crowell.com
hsanborn@crowell.com
taiwilliams@crowell.com

Alexis Ward*
**Crowell & Moring LLP**
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
award@crowell.com

Michael Vine*
**Crowell & Moring LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
mvine@crowell.com

Alexander Rosen*

Omar Gonzalez-Pagan**
**Lambda Legal Defense
  and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: (212) 809-8585
Facsimile: (855) 535-2236
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy*
**Lambda Legal Defense
  and Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006
Telephone: (202) 804-6245
Facsimile: (855) 535-2236
kloewy@lambdalegal.org

Nathan Maxwell*
**Lambda Legal Defense
  and Education Fund, Inc.**
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Telephone: (312) 663-4413
Facsimile: (855) 535-2236
nmaxwell@lambdalegal.org

Pelecanos*†
**Lambda Legal Defense
  and Education Fund, Inc.**
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: (213) 351-6051
Facsimile: (855) 535-2236
pelecanos@lambdalegal.org

K. Lee Marshall*
Carlie Tenenbaum*
**Bryan Cave Leighton Paisner LLP**
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111

6

<div style="display: flex;">
<div>

Jacob Zucker*
**Crowell & Moring LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
arosen@crowell.com
jzucker@crowell.com

\* Admitted *pro hac vice*.

\*\* Application for admission to D. Md. Bar approved; swearing in pending.

† Mailing Address Only

</div>
<div>

Telephone: (415) 675-3400
Facsimile: (415) 675-3434
lee.marshall@bclplaw.com
carlie.tenenbaum@bclplaw.com

Matthew Stanford*
**Bryan Cave Leighton Paisner LLP**
Two North Central Avenue, Suite 2100
Phoenix, AZ 85004-4406
Telephone: (602) 364-7068
Facsimile: (602) 364-7070
matt.stanford@bclplaw.com

</div>
</div>

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of July, 2025, I filed the foregoing Plaintiffs' Supplemental Response Brief in Support of Plaintiffs' Motion for Preliminary Injunction & Stay Pending Judicial Review Pursuant to 5 U.S.C. § 705 electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following counsel of record:

>Michael Jackman Wilson
>Tarra DeShields
>Assistant United States Attorney
>U.S. Attorney's Office
>District of Maryland
>36 S. Charles Street, 4th Floor
>Baltimore, MD  21201
>Michael.Wilson4@usdoj.gov
>Tarra.Deshields@usdoj.gov
>
>*Counsel for Defendants*

/s/
Elizabeth P. Hecker